RHODA HILL, MARY C. REED and SARAH D. HAYWARD

*v.*

SAMUEL HILL, executor of James Hill, deceased; JEHU HILL and THOMAS H. HOFFMAN, administrator *cum testamento annexo* of Samuel Hill, deceased.

[Submitted November 3d, 1905. Decided November 17th, 1905.]

Complainants, as legatees of their father, charged defendants, as executors of his will, as if both defendants were alive, with having received $3,000 as the proceeds of his estate, and showed where in the ordinary course of business they ought to have received $400 from another source, and called on them to account. One of the defendants answered by showing that his co-executor received all the money from the proceeds of the estate proper. and died a year thereafter, and with regard to the $400 disavowed all knowledge thereof, and stated that he paid no attention to the management of the estate and executing the will, either in the lifetime of his co-executor, who, complainants knew, handled the money, and who had been dead seventeen years, or afterwards, and that he was never called on to do anything in the premises till the filing of the bill, seventeen years after the right of complainants to an accounting accrued.—*Held,* that while the answer admitted culpable negligence, the cause of action was for mere nonfeasance, and was barred by laches.

On final hearing on bill and the answer of Samuel Hill, executor.

*Mr. Freeman Woodbridge,* for the complainants.

*Mr. Frederick P. Pearse,* for the answering defendant.

PITNEY, V. C.

The object of the suit is to hold the answering defendant liable as surviving executor of the will of the father of all the parties except Hoffman.

The ground of the complainants' (who are legatees under a will) claim, as finally developed, is negligence on the part of the defendant.

One of the answers to that claim is acquiescence and laches on the part of the complainants of such a character and degree as to bar them in their relief.

The cause being heard on bill and answer, the statements of fact in the answer must be taken as true.

I feel constrained to say that the case is not presented in a satisfactory shape. One cannot avoid the suspicion that the complainants may have a much better case than is stated by their bill, and that the defendant may have a much better case than is stated in his answer.

No answer has been put in by Hoffman, who is charged as administrator *cum testamento annexo* of Samuel Hill, deceased, who was the grandfather of all the parties except Hoffman.

The estate which is sought to be recovered consists (1) of the estate proper of James Hill, the father, which came to the hands of Jehu Hill, now deceased, as co-executor with the defendant Samuel, son of James Hill, deceased, and (2) the share which James Hill was entitled to in the estate of his father, Samuel Hill, deceased, which came into the possession of the defendant Hoffman.

The facts are that James Hill, of Middlesex county, died December 28th, 1885, testate of a will, which, after giving several small legacies and providing for his widow, directed the residue of his estate to be equally divided between his five children, namely, the three complainants and the defendants Samuel and Jehu Hill.

He appointed his brother, Jehu (since deceased), and his son, Samuel, the answering defendant, his executors.

Those executors, in January, 1886, filed an inventory of personal estate, amounting to $1,107.10.

Subsequently, in March of the same year, they sold two

parcels of real estate under a power in the will. One parcel sold for $1,575.55 and the other for $718.72.

The defendant Samuel joined in these deeds, but never received any of the proceeds, the whole having been taken by his co-executor, Jehu Hill, the brother of the testator.

No accounting was ever made by either Jehu Hill, the executor, or by the defendant Samuel Hill.

The bill alleges that one of the complainants has received $100 on account of a legacy of $150 given to her by her father's will, and that another one has received a like sum on account of her legacy of an equal amount.

The bill makes no allegation as to the character of the dealings of the executors with the money of the estate as aforesaid received, but assumes that upon mere joining in the inventory by the answering defendant and by a like joining in the conveyances of real estate he became absolutely at once bound to account for the whole, and prays such an accounting.

In fact, the bill proceeds against Samuel Hill and his Uncle Jehu, as executors, as if each were alive, and takes no notice of the death of Jehu, which occurred, according to the answer, on the 14th of April, 1887, a little more than a year after the sale of the lands.

It alleges no waste of the estate by either executor, nor any special neglect by either.

It does not anticipate any defence which may be set up by the defendants, nor does it state the least reason why the complainants have rested for so many years without calling the defendants to account.

The executors were liable to account early in the year 1887. The bill was filed July 6th, 1904, at least seventeen years after the right accrued.

The only indication of the respective ages of the children found in the bill is the order in which they are named, as follows: Mrs. Hayward, named as such; Mrs. Reed, named as Mary C. Hill; Rhoda Hill (one of the complainants), Samuel Hill and Jehu Hill.

The answer of Samuel shows that at the death of his father he was a little over twenty-one years old. Then, after stating

the death of his uncle, Jehu, the defendant says, "possibly by virtue of the extreme youth of this defendant" he never had anything to do with the actual control and management of said estate, and never had any of the moneys of said estate, which were wholly controlled by the said Jehu Hill, "all of which was fully known and has been fully known for years to the three above-named complainants."

The answer proceeds to state that since the death of Jehu, he (Samuel) never has had any of the moneys of the estate of said deceased, none ever having come to the defendant's hands, the defendant not knowing there was any estate to settle, supposing the said estate had long ago been settled and disposed of by his co-executor.

I feel constrained to say that this section of the answer which I have paraphrased seems to me to admit gross negligence on the part of the answering defendant.

His co-executor died about thirteen months after over $3,000 of the estate had come to his hands, in which he, the answering defendant, was interested to the extent of a legacy of $200 and a share in the residue equal with his sisters and brother.

In admitting, in his answer, the joining in the deeds for the two parcels of land, he says, as to both, that he knew nothing of the circumstances of the sale and received none of the moneys except that he received $100 on account of his legacy, and (after dealing with the interest of his father in the estate of his grandfather, presently to be mentioned), he closes his answer with this allegation:

"In conclusion, says that he knows nothing whatever concerning the estate of his father, never having managed or directed the same, or any of the moneys, with the exception of $100, a part of his legacy, but this defendant believes, charges and insists that upon a settlement of the estate of Jehu Hill, his co-executor, by his executors, it will be shown that there are no moneys in the hands of Jehu Hill, deceased, which have not been paid out in the settlement and distribution of the estate of James Hill, deceased."

Upon this closing allegation, I remark that it is quite insufficient to be treated by the court as a statement of fact which must be taken as true on a hearing on bill and answer.

The same remark applies to another statement in the answer, arising out of the provisions of the will for the testator's widow.

It would seem that he had a second wife, and provided in his will that she should have

"over and above her dower right of one-third of my property after my debts and expenses are paid, the interest of said one-third only to be paid to her as long as she shall remain my widow; one bedstead, one bed and bedding, one set of chairs, one table, one carpet, one looking-glass and the double picture of our photograph."

The effect of this bequest is to give her outright the specific articles of furniture mentioned, and the interest of one-third of his estate as long as she should remain his widow. The allegation of the bill is that the widow married on April 18th, 1889, a little more than three years after her first husband's death, and thereby her interest under the will ceased. It does not appear whether she accepted the bequest to her in lieu of dower. It may be supposed that she joined with the executors in the conveyance of the real estate. There is no allegation either in the bill or answer on that subject. The answer states that the answering defendant knows nothing concerning the remarriage of the widow, "but supposes the same to be true," by which I infer that he means to say that the allegation in the bill in that respect is true. The answering defendant further says that he "understands that the widow received the sum of $500."

This allegation of the answer is subject to the same criticism as that with regard to the result of an accounting by the personal representative of Jehu Hill. It is altogether too vague and uncertain to be treated as an allegation of a fact to be taken to be true on bill and answer. But it may well be supposed that, under the language of the will, the widow, when called upon within two months after the decease of her husband to join in the conveyance of his real estate, demanded and received the sum of $500 as her share of the proceeds, and perhaps in settlement of all demands against the estate, and that such a settlement would be approved by this court.

So much for the facts relating to the estate actually received by one or both of these defendants.

With regard to the interest of the testator in the estate of his father, Samuel Hill, the allegations of the bill are that the grandfather died January 26th, 1885 (about eleven months before the testator) and by his will appointed the testator and one Vanderipe executors, and that these executors proved the will in February, 1885, but the bill does not allege that any of the funds of said estate came to their hands; and that afterwards, in January, 1887, letters of administration *cum testamento annexo de bonis non* were issued to the defendant Hoffman; that in May, 1887, after the death of Jehu, Hoffman filed his account in the Middlesex county orphans court, showing a balance of $1,279.53 in his hands, one-fourth of which, by the express terms of the will of Samuel Hill, set forth in the bill herein, was given to the testator, James Hill. The bill alleges, in substance, that Hoffman has never paid any part of that one-fourth share to either the executors of James Hill or to the complainants, and that he has never been called upon by the defendant Samuel, or by his co-executor, Jehu, to pay the same.

The defendant admits these allegations with regard to the death, will and estate of their grandfather, Samuel, but he says he knows nothing about the accounting of Hoffman, or the amount found by the accounting in his hands, and he asserts that he has never received any money from Hoffman, and says

"that he has never been called upon to call the said Thomas H. Hoffman to account, and that he is as desirous of an accounting as the complainants, if the complainants' statements are true."

Here, again, I feel constrained to say that the defendant admits the utter neglect of his duty as executor. His co-executor, Jehu, died, as we have seen, in April, 1887; the final account of Hoffman, as executor of their ancestor, was filed in May, 1887, and allowed by the orphans court on the 17th of July in that year. It does seem to me that, however the defendant may have been justified in leaving the execution of the will of his father and the administration of his estate to

his co-executor and uncle during the latter's lifetime, surely, upon his death, it was his duty to look after it, and especially after the interest of his father in the estate of his grandfather.

The case, then, may be briefly stated thus: The complainants, as legatees under the will of their father, charge the defendants, executors thereof, as if both were alive, with having received upwards of $3,000 as the proceeds of his estate, and showing where, in the ordinary course of business, they ought to have received over $400 from another source, and calls on them to account.

One of the defendant executors answers by showing that his co-executor received all of the moneys from the proceeds of the estate proper, and died about one year after such receipt, and with regard to the $400 from the other source he disavows all knowledge of such money, and states, in substance, that he never paid the least attention to the business of managing the estate and executing the will, either in the lifetime of his co-executor or afterwards, and sets up that he was never called upon to do anything in the premises until the filing of this bill, seventeen years after the right of the complainants to an account accrued.

This answer admits, in my judgment, culpable negligence, and leaves the defendant liable to account, unless the mere lapse of time is sufficient to excuse him and bar the complainants' right.

The defendant, in his answer, does not specifically set up the lapse of time as a bar. He does not show specifically how he has lost anything in the way of evidence; nor, on the other hand, do the complainants anticipate the defence of lapse of time or give any excuse for their laches. They rest on their right to an account as if both executors were living and the transactions were of recent date.

The defendant does not set up in his answer either the statute of limitations, or, as before remarked, the delay of the complainants in bringing their suit, but rests himself solely on the ground that he never received any of the money of the estate, and in so doing admits a cause of action, namely, negligence on his part, which the complainants have not alleged.

8

But, although the real question in the cause does not arise on the pleadings, yet it was dealt with by counsel in their arguments precisely as if it did so arise, and was treated by them as controlling the decision of the cause. I have therefore felt it to be my duty to consider it and act upon it precisely as if it did arise on the pleadings.

It will be perceived that the cause of action does not arise out of an ordinary breach of trust by the trustees of an express continuing trust, such as making an improper investment whereby money is lost to the *cestui que trust,* or a misappropriation of the trust funds, and the like, where it has been held that the statute of limitations does not apply, and the court is lenient with the *cestui que trust* in dealing with the question of laches in bringing suit. The cause of action, as already remarked, arises out of the neglect of the defendant to give proper attention to the management of the estate, and to call the estate of his co-executor to account promptly after his decease, and in failing, himself, after the death of his co-executor, in calling for and demanding his father's share in the estate of his grandfather. It is plainly a case of nonfeasance, and not misfeasance.

Now, all these causes of action arose at once. Complainants' right to an account arose within a reasonable time after the sale of the property. They are chargeable with notice of the amount of the inventory, with the amount of the proceeds of the sale of the real estate and with the fact that their father was entitled to an interest in the estate of their grandfather. They are chargeable with notice that they were entitled to a prompt accounting, which is precisely the remedy which they are here asking.

Not only do they not allege their ignorance in these matters, but it is quite impossible to believe that they were so far indifferent to their pecuniary rights as not to be informed that the time had arrived when they were entitled to receive from their father's estate more than they did actually receive, unless the same was absorbed in the payment of debts.

Moreover, it is distinctly alleged by the answer that they knew that the moneys were handled by Jehu, and at his death

it is impossible to suppose that they did not think that if there was anything coming to them from the estate they ought to look after it.

The complainants, then, are chargeable with resting on their rights for about seventeen years without the least excuse whatever.

In the meantime it is fair, I think, to infer that the vouchers and papers relating to the estate, which must have been in the hands of their uncle, Jehu, have been lost or mislaid, and are not now available to the answering defendant.

Under these circumstances, it seems to me it would be a great hardship to call on the defendant to account for the moneys actually received by his co-executor, and which it is quite possible to believe may have been entirely and properly paid out by him for debts of the testator in the due course of the administration of the estate.

With regard to the claim against the defendant Hoffman, there can be no presumption of any money having come to the hands of the deceased executor from him, for he died before the account was settled and the balance determined. The complainants were chargeable with notice of their rights under the will of their grandfather, and that the money was in the hands of Hoffman, and it seems to me they should have taken some measures years ago to enforce them.

Moreover, if the statute of limitations had been pleaded or distinctly set up in this case, I am inclined to the opinion that it should have prevailed by what is called analogy. As before remarked, there was here no continuing or express trust. Complainants' right to an account arose at least seventeen years before bill filed. It was reasonable for the answering defendant to allow his uncle, Jehu, to have exclusive possession of the proceeds of the estate for the purpose of settling the same. No liability was incurred by him in that respect unless there were facts brought to his attention, of which there is no proof, showing that he ought not to have trusted him. This is entirely clear under the course of decisions in this state. His liability, if any, must, as before remarked, rest solely upon his negligence in not calling his uncle's personal representatives

to account and procuring from them the necessary materials for rendering an account of his uncle's dealings with the estate, and his negligence in failing, on his own motion, to demand from the defendant Hoffman his father's share of the estate of his grandfather. The complainants are chargeable with knowledge of this neglect and that any cause of action they had arising thereout accrued at once, and the principles which protect *cestuis que trustent* against the operation of the statute of limitations does not apply.

Upon consideration of the whole case, I think that the bill should be dismissed as against the answering defendant, without costs, but it may be retained for the purpose of reaching the defendant Hoffman, if the complainants shall so desire.