[Civ. No. 2012. Third Appellate District.—September 15, 1919.]

WILLIAM H. PRATT, as Administrator, etc., Appellant, v. JENNIE S. PRATT, as Administratrix, etc., Respondent.

[1] ESTATES OF DECEASED PERSONS — ACTION AGAINST REPRESENTATIVE OF ESTATE OF DECEASED ADMINISTRATOR — PERFORMANCE OF OFFICIAL DUTY—PRESUMPTION.—In this action against the representative of the estate of a deceased administrator for moneys collected by the latter as such administrator and alleged not to have been accounted for, it must be presumed, in view of the absence of positive evidence to the contrary and the lapse of the great number of years, that the deceased administrator performed his official duty, that he acted honestly and in good faith, and that if any money was due, it was paid. Such presumption is not affected by the provisions of the statute in relation to the administration of estates.

[2] ID.—RIGHT OF ADMINISTRATOR TO SETTLE WITH SOLE HEIR WITH-
OUT ADMINISTRATION.—Where there was no real estate, no credi-
tors, and no controversy as to the heirs, the father of the de-
ceased, between whom and the administrator a relation of trust
and confidence existed, being the sole heir, it cannot be said that
it was the duty of the administrator in any event to pursue the
course indicated by sections 1443, 1622, 1636, and 1665 of the
Code of Civil Procedure. While that would have been the more
regular procedure, and would have afforded him greater security,
there was nothing unreasonable or illegal in his settling with
his father without the formality of the ordinary administration
of estates, his determination being subject to review by the court
at the instance of any interested party.

[3] ID.—LACHES—WHAT CONSTITUTES—LAPSE OF TIME.—Laches, un-
like the statute of limitations, is not a mere matter of time. It
involves and implies some other circumstance or circumstances that
would render inequitable the enforcement of the claim, such as
a change in the relation of the parties or the condition of the
property that is deemed a justification for the denial of any re-
lief. The great lapse of time, especially if the claimant has
knowledge of the existence of his right, however, is often held
sufficient to create the presumption or implication of another fact
of an equitable nature, and thus to justify a decision against the
claimant.

[4] ID.—RIGHT OF HEIR TO COMPEL SETTLEMENT OF ESTATE.—An heir
has the right to invoke the aid of the court to compel the ad-
ministrator to settle the estate within the statutory time.

[5] ID.—EVIDENCE — INSTRUMENT ACKNOWLEDGED OUTSIDE STATE —
SUFFICIENCY OF OBJECTION TO.—An objection to the admission in
evidence of a power of attorney executed in England on the
ground that it was not properly acknowledged must be specific in
order to put the person offering it on proof of its proper
acknowledgment. An objection to its admission on the ground
that it was not acknowledged as required by the laws of this
state is not sufficient.

[6] ID.—PAYMENT OF CLAIM — DEATH OF WITNESSES — EFFECT OF
LAPSE OF TIME—EVIDENCE—FINDING.—The facts that the only
parties who could have positive knowledge of the payment or
nonpayment of the money from the administrator to the father
were dead, and that but slight evidence with reference thereto
was offered on both sides, justified the trial court in its conclu-
sion that owing to the great lapse of time evidence could not be
secured as to the payment or nonpayment of the claim.

[7] ID.—LACHES—DISCRETION OF TRIAL JUDGE.—There is no hard-and-
fast rule as to the length of time that would bar such an action
as this. Much depends upon the peculiar circumstances of the

case, a large discretion being confided to the trial judge, and the disposition of an appellate court is and should be to respect that discretion and not to interfere with his conclusion unless manifestly an injustice has been done.

APPEAL from a judgment of the Superior Court of Stanislaus County. L. W. Fulkerth, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hawkins & Hawkins for Appellant.

J. M. Walthall for Respondent.

BURNETT, J.—George Pratt died on the twelfth day of June, 1876. On the first day of July following, his brother, Samuel Pratt was appointed the administrator of his estate by the probate court of the county of Stanislaus. Samuel Pratt thereupon qualified as such administrator and immediately collected from two certain banks the sum of $850, which the said George Pratt, deceased, had deposited therein, but he took no further steps in the administration of, nor did he account to, said estate for the moneys he received. On the fourteenth day of January, 1915, the said Samuel Pratt died and on the fifth day of February, 1915, letters of administration of his estate were issued to respondent. On the twenty-fifth day of October, 1915, plaintiff was appointed administrator of the estate of said George Pratt, deceased, and he thereupon presented a claim against the estate of Samuel Pratt in favor of the estate of George Pratt for said money, with compound interest, the total amount of the claim being over eleven thousand dollars. It was rejected by the said administratrix and suit was immediately brought thereon. The said George Pratt left as his sole heir at law, his father, Samuel Pratt, Sr., who was and always remained a resident of England. He also left several brothers and sisters in that country and one brother, the plaintiff herein, who, after the death of George, the exact time not being shown, came to California. There is no positive evidence that said Samuel Pratt ever made any accounting or paid any money to his father, the only showing as to any money transactions between him and the other members of the family consisting of

his sending a few small sums of money to his sisters in 1913 and 1914.

The grounds for the trial court's judgment in favor of the defendant are disclosed by the following findings: "The court finds that the said Samuel Pratt collected certain sums of money belonging to the estate of George Pratt, deceased, to wit, said sum of $850, that he never accounted to the said estate therefor, but that he received and held a power of attorney from his father, Samuel Pratt, Sr., who was the sole heir of said George Pratt, deceased, to collect said money and pay the same to his father, and the court finds that the presumption is that said Samuel Pratt accounted to said father for said money collected, and from said presumption the court finds that said money was paid by Samuel Pratt to his father, Samuel Pratt, Sr.; that the said Samuel Pratt, Sr., deceased, did not die for twenty-three years after the death of said George Pratt, deceased, and that during said time had knowledge of the death of said George Pratt, deceased, and the appointment of said Samuel Pratt as administrator of his estate during all of said years; that almost immediately after the death of said George Pratt, deceased, the said father executed and forwarded to the said Samuel Pratt said power of attorney; that during no time during said time of said thirty-eight years did said plaintiff make any demand upon said Samuel Pratt for an accounting as administrator of the estate of George Pratt, deceased; that no demand was made upon said Samuel Pratt for an account as such administrator during his lifetime. That there is on file in the estate of said George Pratt, deceased, no demand or request for an accounting by the said plaintiff, or anyone else, filed during the lifetime of said Samuel Pratt.

"That after the said letters were issued to the said Samuel Pratt, he took no further steps to settle said estate, and that no further steps have been taken in said estate and that none were taken any time prior to the fourteenth day of January 1915, at which date the said Samuel Pratt died, and that no inventory and appraisement were ever filed in said estate from the time of the appointment of the said Samuel Pratt as such administrator until his death and that no claims have been filed against said estate.

"That the evidence is insufficient to show that no money out of the money of said estate of George Pratt, deceased, was

paid out for sickness or burial; that evidence cannot be obtained by reason of the long lapse of time between the death of said George Pratt, deceased, and the institution of this action to establish any allegation in the pleadings, for the reason that the said Samuel Pratt, the person having full knowledge of the matters, and all other persons from whom information can be had, are dead; that the evidence is insufficient to establish what disposition was made of any moneys or property belonging to said estate of George Pratt, deceased, which might have or did come into the hands of said Samuel Pratt as administrator of said estate; that the evidence is insufficient on account of the great lapse of time since the death of said George Pratt, deceased, and the appointment of Samuel Pratt as his administrator, and the death of all those possessed of the knowledge of such fact, to establish the allegation in the complaint that the money alleged to have been collected by said Samuel Pratt for or on account of the estate of George Pratt, deceased, was never paid to any of the heirs of the said George Pratt, nor expended for the benefit of the estate of George Pratt, nor paid to any other person in interest for the estate of George Pratt or otherwise, or that it was never paid out to anyone else, or that it was used for the benefit of said Samuel Pratt.

"The court, therefore, finds from the foregoing facts, that said Samuel Pratt accounted to and paid over to said Samuel Pratt, Sr., the father of said George Pratt, deceased and the sole heir of said George Pratt, deceased, all sums of money to which he, the said Samuel Pratt, Sr., would have become entitled to, or was entitled to from said estate."

As conclusions of law the court made the additional findings: "That said action is barred on account of the laches of the plaintiff, and each and all of the heirs of Samuel Pratt, Sr., in demanding an accounting of the said Samuel Pratt as administrator of the estate of George Pratt, deceased.

"That the said claim of the plaintiff as administrator of the estate of George Pratt, deceased, against the estate of Samuel Pratt, deceased, is a stale claim and not enforceable against the estate of Samuel Pratt, deceased.

"That on account of the great lapse of time since the appointment of said Samuel Pratt as administrator of the estate of George Pratt, deceased, the said Samuel Pratt is presumed

to have duly accounted to the heirs of said George Pratt and to have paid their distributive shares in said estate.''

It thus appears that four considerations entered into the decision of the lower court, namely, the failure of proof on the part of plaintiff, the presumption of payment by Samuel Pratt to his father, the staleness of the claim and the laches of said plaintiff and the other heirs of Samuel Pratt, Sr.

As to the first, it may be said that the record herein furnishes a striking demonstration of the difficulty of proving a fact after the lapse of so many years. And in considering this phase of the case, it must be deemed a fair inference that the parties presented all the evidence that was available. We cannot say that there is an entire absence of evidence of the failure of Samuel Pratt to properly account with his father. However, it is meager, and, in view of the exclusive province of the trial judge, acting in place of a jury to determine the probative force of the testimony, we think no appellate court would be justified in holding that a fair consideration of the evidence should have led the lower court necessarily to the conclusion that Samuel Pratt had not paid his father all that the latter was entitled to. In regarding the point we must remember that, while it was shown, and the court found that Samuel Pratt had collected $850, there is no evidence whatsoever as to the expense of the last illness of George Pratt or of his funeral, or of the administrator's, or the attorney's fee in the administration of the estate. Respondent claims $350 to be a reasonable amount for these items. Ordinarily, such expenses would be equal to that amount. Of course, it is impossible to say positively how much, if anything, was paid out for any or all these matters, and in the absence of any evidence whatever as to this consideration, the trial court would necessarily be in doubt as to the amount left in the hands of Samuel Pratt to be paid over to his father.

But, assuming that the burden of proof was upon respondent to show how much, if anything, was paid for these purposes, and in the absence of any showing to that effect, the court was bound to charge the estate of Samuel Pratt, deceased, with the full amount, which was collected, the inquiry then arises, whether the evidence was such that the court should have found that it was not paid to Samuel Pratt, Sr.

The testimony on this point in behalf of appellant was brief and we may herein set it out.  John Radley testified that he had known Samuel Pratt since 1875, that they were working together in June, 1876. "Samuel Pratt's brother, George Pratt, got hurt and Samuel Pratt got a message to come up, and he went.  He returned the next day.  He then told me that his brother was hurt very bad and he didn't think he would live very long.  Samuel Pratt was running the header for Mr. Wardrobe and he said he came back to keep his job and he said that he had hired a man to take care of his brother.  His brother soon hereafter died." After stating that Samuel told him that he collected over seven hundred dollars from the Stockton and Merced banks belonging to his brother, George, the witness proceeded: "I once asked him if he had sent the money to his father and he told me no, but he was going to.  We had several conversations in regard to it.  The last time I asked him about it he said he had put that money to interest so it would draw more money and he would send it later on to his father.  He told me he knew where he could buy 160 acres of land and he asked my opinion. Afterward he bought the land." He also stated that Samuel Pratt never told him anything as to whether his father had made a demand for the money.  Plaintiff offered in evidence a mortgage on certain lands in Stanislaus County, dated November 3, 1876, made by James Berry to Samuel Pratt to secure the sum of $1,850 and a satisfaction thereof on October 24, 1879.  A deed from one Emeline Daggett to Samuel Pratt reciting a consideration of one thousand dollars and dated October 12, 1878, was also introduced in evidence.

George Squire then testified: "I knew Samuel Pratt for ten years, from 1873 to 1883.  He told me that George Pratt asked him to collect certain moneys, $950 or $960, and send it to his father.  The money was in the savings bank at Stockton and Merced.  What I know about the matter was what I learned from being his nearest neighbor and what he told me himself.  I know he had the money.  He bought with it three quarter-sections of the town of Oakdale.  One of the quarters was purchased from me."

The trial court might well hesitate to find from the foregoing that Samuel Pratt violated his trust and withheld from his father any money to which he was entitled.  The incidents concerning which the witnesses testified were held in the un-

certain grasp of memory reaching back nearly forty years, and this circumstance was, of course, significant in the determination of their credibility. That after such a period of time they could state with accuracy what was said and done concerning a matter in which they had no personal interest, might well challenge credulity. It is well to remember in this connection that the substitution or elimination of a single word of the conversation, or the addition of a slight incident, might present the consideration in an entirely erroneous light. Moreover, it is admitted that Samuel Pratt did not conceal from these witnesses the fact that he had money in his possession belonging to his father and he expressed his intention of sending it to him. This, at least, tends in some degree under the circumstances to negative the theory of a dishonest purpose. In fact, the only incident detailed by the witnesses lending any support to the claim that Samuel Pratt failed to settle with his father was the purchase of land to which they testified. But as to this, in the first place, it may be said, there is nothing to show that he did not have money of his own. That he had some is quite apparent, indeed, from the amount invested. That he also purchased the land with his own money would be presumed, were it not for the said testimony of George Squire that Samuel Pratt "bought with the money three quarter-sections in the town of Oakdale." But this testimony is quite unsatisfactory in the absence of any further explanation and it is more significant for its omissions than for what was stated. When the land was bought does not appear, the deed not being offered in evidence, nor how much was paid for it, nor how long it was retained by Samuel Pratt. Furthermore, the statement of the witness undoubtedly involved his mere opinion from what was told him by said Pratt and his neighbors. Again, his credibility was for the trial judge and we cannot say that he was not justified in attaching little, if any, importance to this testimony.

[1] But according it full credit, would the lower court be required to find from this circumstance that the money was not paid to Samuel Pratt, Sr.? We think not. A more just and reasonable inference would be that the son was moved by an honest and filial purpose to increase his father's possessions, that he was successful in his endeavor, and that in due time he transferred the money with its increase to its rightful

owner. We repeat, the record contains some evidence, though slight, as we view it, of the dereliction of Samuel Pratt, Jr., in the premises, but not of sufficient probative force for us to hold that the lower court was bound to find that there was no payment. How would the case then stand, and, particularly, what presumption should be indulged? Clearly, we think, that Samuel Pratt, Jr., performed his official duty and that he acted honestly and in good faith. A contrary presumption would impute to him not only a violation of the obligations of his trust, but an utter indifference to the compelling impulses that usually characterize such relation of kinship, and, more than that, the actual commission of a crime. This is not to be permitted, especially in view of the great number of years that had elapsed. The whole record, we are persuaded, justifies the presumption and the conclusion that, if any money was due, it was paid.

Many cases of similar import are found in the books and some of them determine that the presumption of settlement should be indulged where it is not overcome by satisfactory evidence to the contrary. In *Jones* v. *Jones,* 91 Ind. 378, the right to a settlement had existed for about twenty years and the court said: "This was a stale demand. In the absence of evidence to the contrary, the presumption would be it had been paid. Even in cases of chancery jurisdiction, to which the statute of limitation is not a bar, a court of equity will presume that a stale demand has been paid. (*Parker* v. *Ash,* 1 Vern. 256; *Sturt* v. *Mellish,* 2 Atk. 610; *Higgins* v. *Crawford,* 2 Ves. Jr. 571; *Smith* v. *Calloway,* 7 Blackf. (Ind.) 86; *Stehman* v. *Crull,* 26 Ind. 436.)"

Nor do we think this presumption is affected by the provisions of the statute in relation to the administration of estates. It is true that the Code of Civil Procedure provides that an administrator must make and return to the court a true inventory and appraisement of the estate (sec. 1443); when required by the court or upon application of any person interested, he must render an account (sec. 1622); upon the hearing of the accounts, the heirs may contest all matters included therein (sec. 1636); and final distribution of the estate can be had only upon final settlement of the accounts of the administrator, at which time the court ascertains who are the persons entitled to the estate (sec. 1665).

[2] In view of the failure of Samuel Pratt, Jr., to comply with these various provisions of the statute it is contended that he had no right or authority to pay out any money to his father, and, hence, the presumption would be that he acted accordingly. But it must be remembered that the only parties interested in the regularity of the proceedings are the administrator himself, the creditors and the heirs, and each case must be considered in the light of its own peculiar facts. Herein there was no real estate and we must take it for granted that there were no creditors, unless, perhaps, on account of the last illness and funeral expenses of the brother; that there was no controversy as to the heirs; that a relation of trust and confidence existed between the administrator and his father; that the son believed, and had reason to believe, that no question would ever arise as to the integrity of his conduct; that he knew how much his father was entitled to, and believed that he could, with safety, settle with him without incurring any further expenses of administration.

It can hardly be said that it was his duty in any event to pursue the course indicated by said provisions of the code. That would have been the more regular procedure, and it would have afforded him greater security, but if the facts existed as we have supposed, there was nothing unreasonable or illegal in his settling with his father without the formality of the ordinary administration of estates, and we deem it not improbable that he followed the shorter way. His determination was, of course, subject to review by the court at the instance of any interested party, but we must suppose that he felt amply protected and that the heir was satisfied.

In the *Estate of Willey*, 140 Cal. 238, [73 Pac. 998], the executors, in an account rendered by them, sought to have themselves credited with certain advance payments made by them to certain beneficiaries named in the will, without obtaining an order of court, and it was held that the trial court properly retired those items from the account to be considered when the petition for distribution was heard. Therein was involved the construction of the terms of a will, and a controversy existed between the interested parties, which the court was called upon to review in the regular course of the administration of the estate. The executors could not by their action preclude the court from determining the controversy at the proper time and, manifestly, as it was stated:

"When an executor undertakes to construe the provisions of a will or to make payments thereunder in anticipation of the decree of distribution he does so at his peril." While the facts herein distinguished this case from that, still it may be conceded that, if said Samuel Pratt made a settlement with his father without an order of court, he did so "at his peril," and that he could not thereby forestall an accounting in court, yet under the circumstances of this case we deem it not an unreasonable inference that he did make such settlement, believing that he was justified in so doing, and we think it cannot be said that thereby he violated his duty or transgressed any provision of the law.

The findings as to the staleness of the claim and the laches of plaintiff may be considered together, as they are closely related. [3] Appellant is clearly right in the contention that laches, unlike the statute of limitations, is not a mere matter of time. It involves and implies some other circumstance or circumstances that would render inequitable the enforcement of the claim. This may be a change in the relations of the parties or the condition of the property that is deemed a justification for the denial of any relief. It may be added, though, that the great lapse of time, especially if the claimant has knowledge of the existence of his right, is often held sufficient to create the presumption or implication of another fact of an equitable nature, and thus to justify a decision against the claimant. As to the character of this defense and the reasons for its recognition and enforcement, it is sufficient to refer to the carefully considered opinion written by Justice Hart and adopted by the supreme court in the case of *Miller* v. *Ash*, 156 Cal. 544, [105 Pac. 600].

To illustrate, however, the peculiar views of various courts concerning situations similar to the one before us, we may cite some instances of the application of the doctrine of "staleness" and "laches."

In *Perkins* v. *Cartmell*, 4 Harr. (Del.) 270, [42 Am. Dec. 753], a legacy was involved for which no demand had been made for thirty years and the court said: "This suit is barred by lapse of time independently of the statute of limitations, upon the presumption of payment and satisfaction, which presumption is not rebutted. The defense founded upon mere lapse of time and the staleness of the claim, in cases where no statute of limitation directly governs the case,

is said by Judge Story (2 Com. on Eq. Jur., sec. 1520, p. 904), to be a defense peculiar to courts of equity. Upon general principles of their own, independently of the statutes of limitation, they have always discountenanced laches and neglect; and refused their aid to stale demands where the party has slept upon his right, or acquiesced for a great length of time. After a considerable lapse of time, they refuse to interfere, from considerations of public policy, and the difficulty of doing entire justice when the original transactions have become obscure by time and the evidence may be lost.''

There was something like twenty years' delay in demanding an accounting in the case of *Osborne* v. *O'Reilly,* 43 N. J. Eq. 647, [12 Atl. 377], and the court said: ''This great delay might have justified the court in dismissing the complainant's bill without looking at the merits. It certainly requires of the court to take care that the dangers of injustice, which always attend the investigation of facts long since transpired are not overlooked, and that before disturbing the status acquiesced in by both parties for so many years very convincing evidence of the propriety of a change shall be adduced.''

In *Le Roy* v. *Bayard,* 3 Bradf. Sur. (N. Y.) 228, it was held that the lapse of twenty-nine years since the administration of the estate commenced is sufficient to excuse a formal inventory and account.

In *Calhoune's Appeal,* 39 Pa. St. 218, the court determined that since the devisee and her heirs knew for twenty-five years of the mismanagement of the estate but required no accounting nor sought any relief they were not entitled to the aid of a court of equity, after having so slept on their rights, the court saying, however: ''Had there been ignorance of facts or legal disabilities to account for the extraordinary neglect of legal remedies on the part of the appellants, their inaction might have been excused, but nothing is shown or suggested by way of excuse.''

In *Gatewood* v. *Gatewood's Admx.* (Ky.), 70 S. W. 284, ten years after the death of an administrator suit was brought against his estate for a sum claimed to have been retained by him belonging to plaintiff, the claim being thirty years old, and it was held that the claim was stale and not enforceable in equity.

In *Hill* v. *Hill*, 70 N. J. Eq. 107, [62 Atl. 385], the court of chancery held that the lapse of seventeen years was sufficient to bar an application for an accounting of an administrator. The court declared that the complainants were "chargeable with notice that they were entitled to a prompt accounting, which is precisely the remedy which they are here asking. Not only do they not allege their ignorance in these matters, but it is quite impossible to believe that they were so far indifferent to their pecuniary rights as not to be informed that the time had arrived when they were entitled to receive from their father's estate more than they did actually receive unless the same was absorbed in the payment of debts. The complainants, then, are chargeable with resting on their rights for about seventeen years without the least excuse whatever. In the meantime it is fair, I think, to infer that the vouchers and papers relating to the estate, which must have been in the hands of their uncle, John, have been lost or mislaid, and are not now available to the answering defendant."

In *Re Henry's Estate*, 198 Pa. 382, [48 Atl. 274], it was held that an application for an accounting of an administrator was barred by the lapse of eighteen years, 'the court saying that the case was "made much stronger by reason of the death of the person whose liability to account is now asserted." Therein the court cites with approval the case of *Gress' Appeal*, 14 Pa. St. 463, wherein an account was refused after the lapse of eighteen years "not because of either presumption of payment or settlement, but because it resulted altogether from the unwarrantable negligence of the party to call for an account without offering any sufficient reason accounting for the delay."

In *Phillips* v. *Piney Coal Co.*, 53 W. Va. 543, [97 Am. St. Rep. 1040, 44 S. E. 774], a delay of ten years was held sufficient to bar an action to reform a deed, and the court declared that a party who seeks to avoid the charge of laches in such case "should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim, how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor may justly refuse to consider his case, on his own showing without inquiring .

whether there is a demurrer or formal plea of the statute of limitations contained in the answer.''

In *Preston* v. *Preston*, 95 U. S. 200, [24 L. Ed. 494, see, also, Rose's U. S. Notes], the suit was brought twenty-five years after the right accrued and the court said: ''The delay of one to this extent in prosecuting his rights under a contract is, except under special circumstances not existing here, such laches as disentitled him to the aid of a court of equity.''

In *Pusey* v. *Gardner*, 21 W. Va. 469, it was held that a court of equity will not set aside a deed, made by a daughter to her father immediately before her marriage, conveying her remainder in land, in which the father had a life estate, upon the ground of undue influence after an interval of thirty-five years and after the death of the father, though the claim of the daughter is not barred by the statute of limitations, where the case is not a clear one and there are no circumstances which sufficiently account for the delay. Therein was quoted the following statement from Kerr on Fraud and Mistake, section 305: ''Lapse of time, when it does not operate as a positive statutory bar, operates in equity as an evidence of assent, acquiescence or waiver.''

Other cases to the same effect are available, but they need not be cited.

Appellant finds comfort in certain other decisions, which he claims to be essentially in conflict with the cases upon which respondent relies. But it can hardly be said that they teach another doctrine, although some of them present a different view of the burden of proof. One of them is the carefully considered case of *Depue* v. *Miller*, 65 W. Va. 120, [23 L. R. A. (N. S.) 775, 64 S. E. 740], wherein the West Virginia supreme court of appeals declared it to be a sound doctrine that ''mere forbearance to compel rendition of a just debt or other right, *the existence of which is clear beyond doubt*, does not prejudice the party from whom it is due, and it is not inequitable to enforce rendition thereof after long delay; but if the length of time be long enough in itself, or with the aid of circumstances and conduct to satisfy the chancellor that the plaintiff had abandoned his right before he brought suit to enforce it, his demand will be regarded as stale and lost by laches.'' However, the court held that the claim therein was *fully proven by documentary evidence* under circum-

stances not in any way operating to the prejudice of the defendants and tending to negative the inference of intent on the part of plaintiff to abandon or relinquish his right, and concluded that the delay in the assertion of the right for a period of less than twenty years would not bar relief.

In *Glen* v. *Kimbrough,* 58 N. C. 173, the action was held not to be barred by the lapse of thirty-four years, but the decision was based upon the ground that there was no representative of the estate against which the action could be brought. The court, however, recognized the rule to be that after the lapse of a long period of time a presumption will arise "of payment or satisfaction or abandonment; but this presumption is one of fact, and is rebuttable, and where it appears it has not been settled, or where it appears there was no one with the legal power to make a settlement, the presumption is rebutted."

In the *Estate of Fischer,* 189 Pa. St. 179, [42 Atl. 8], the main question was as to the validity of a certain release, and it was justly held that the lapse of seventeen years did not bar the claimant from seeking to avoid the effect of said release on the ground that she imperfectly understood English, did not comprehend the meaning of the terms employed, and was induced to execute it by reason of certain threats which were made. It was in view of these circumstances that the court said: "There is nothing, therefore, left to sustain the plea of laches but mere lapse of time; and that is clearly insufficient."

In *Wilson* v. *McCarty,* 55 Md. 277, it was held that the orphan's court had jurisdiction to compel a surviving executor to return assets of the estate or recover them where they could be recovered even where an account called final had been allowed and some fourteen years had elapsed since such account. The court said this could be done within a reasonable time, and "what is reasonable time depends upon the peculiar circumstances of each case, and the character of the correction to be made."

In *Werborn* v. *Austin,* 82 Ala. 498, [8 South. 280], the court recognized the presumption of payment from the lapse of twenty years in the case of a trust but held that it was overcome by evidence to the contrary.

In *Branch* v. *Hanrick,* 70 Tex. 731, [8 S. W. 539], suit was brought August 11, 1885, against one who had been appointed

administrator of an estate in 1867. The action was by one claiming a distributive share of the estate, who sought to compel an accounting by the administrator. The latter contended that by virtue of a certain statute of Texas, the administration of the estate was conclusively presumed to have been closed, but the supreme court held that said statute had been repealed and that it was proper to show that such settlement had not been made.

The important question in *Re Sanderson,* 74 Cal. 199, [15 Pac. 753], was whether the executor had been negligent as to the collection of a certain note, he having made no excuse for his failure. The matter was covered by section 1615 of the Code of Civil Procedure, providing that "no executor or administrator is accountable for any debts due to the decedent, if it appears that they remain uncollected without his fault." The supreme court properly held that the statute of limitations did not run against the continuing trust of the executor, and that in case the debt was not collected, the statute imposed upon him the burden of showing that it was without his fault.

In *Bremmerly* v. *Woodward,* 124 Cal. 568, [57 Pac. 561], the action was brought for an accounting about eleven years after the last account had been rendered. It is plain, though, that no final accounting could have been enforced against Woodward during the disability of the minors, the will containing this provision: "Whenever one of my children comes of age or shall be entitled to his or her share of the estate then remaining in the hands of my executors, and they are hereby directed and authorized to deliver up such child's portion by a fair division made of the land belonging to the estate." It seems that the youngest minor reached his majority only about one year before the suit was brought. So, the case is hardly in point here. It is true that the court said: "To show an honest execution of the trust it was incumbent upon Woodward to show what he did with the moneys. In the absence of such showing I think we must conclude that he did not use them for the estate." That was a proper rule to apply under the peculiar circumstances of the case. Besides, the evidence and pleadings of the parties were such that the lower court could hardly have concluded otherwise than in favor of plaintiff, the serious question on appeal being as to the sufficiency of the finding of Wood-

ward's neglect to invest the trust money and as to the amount of interest that should be charged against him.

But appellant claims that the lower court without warrant assumed or found certain circumstances to exist which are essential to the support of the conclusion that plaintiff and the other heirs were chargeable with laches. One of these, namely, in relation to the fact that no inventory was filed nor other step taken in the administration of the estate, we have already noticed. [4] We may add that it was undoubtedly the right of the heir to invoke the aid of the court to compel the administrator to settle the estate within the statutory time.

Again, it is claimed that the evidence does not show that the heirs had knowledge of the death of George Pratt and of the condition of his estate. The only heir, as we have seen, for twenty-three years was his father, and power of attorney from him to Samuel Pratt, Jr., dated July 11, 1876, was received in evidence in which he referred to "my late son George Pratt, deceased." [5] It is true that an objection was made by appellant to the introduction of this instrument on the ground that "the deed and certificate is not in conformity with our statute and that the execution is insufficient, and that the acknowledgment is not in the form required to prove the signature of a signer to a document, and that it is not duly authenticated as required by the laws of the state of California, and it does not show that it has ever been acted upon as genuine and its custody has not been explained and it does not appear that it has ever been treated as a genuine document." The power of attorney purported to be executed in England and acknowledged before Cad. E. Palmer, a notary public of Barnstaple, in the county of Devon, and had the seal of his office attached. This notary certified that Samuel Pratt appeared before him "and acknowledged the said letter of attorney to be his act." To this with the seal of his office was annexed the certificate of the United States consul at Bristol, England, "that the foregoing signature and seal are the true and genuine signature and seal of Cadwaloder Edwards Palmer, a notary public, residing at Barnstaple, in the county of Devon, England." Section 1189 of our Civil Code specifies the general form of the certificate of acknowledgment, but adds: "Provided, however, that any acknowledgment taken without this state in accordance with

the laws of the place where the acknowledgment is made, shall be sufficient in this state; and provided further, that the certificate of the clerk of a court of record of the county or district where such acknowledgment is taken, that the officer certifying to the same is authorized by law so to do, and that the signature of the said officer to such certificate is his true and genuine signature, and that such acknowledgment is taken in accordance with the laws of the place where the same is made, shall be *prima facie* evidence of the facts stated in the certificate of said clerk.'' Since the instrument was executed in England, it was, therefore, necessary that it be acknowledged according to the law of that country. But if it was not so acknowledged, or there was any claim to that effect, such specific objection should have been made. The only objection in that respect was that it was not acknowledged as required by the laws of this state. We may add that the certificate contemplated by said *proviso* is not required to be attached to the acknowledgment. If attached, it affords *prima facie* evidence of the proper acknowledgment of the instrument, but, in its absence, other evidence of compliance with the requirement of the foreign law may be offered as provided by sections 1901 or 1902 of the Code of Civil Procedure. Appellant should have made the specific objection to put the respondent to such proof.

But, regardless of this instrument, it is not to be supposed that the father for over twenty years was ignorant of the death of his son. The presumption that ''things have happened according to the ordinary habits of life'' would justify the inference that he made inquiry and ascertained from his son, Samuel, that George had passed away. As to William, the plaintiff, the evidence shows that he lived for some years in the county of Stanislaus, wherein the latter was appointed administrator of the estate of his brother, George, and it would be quite unreasonable to assume that he was ignorant of the situation. If he had not known of the death of George or of the father, of course, he would have so testified when he was on the stand. The fact that he was not interrogated concerning it is quite sufficient under the peculiar circumstances of the case to lead to the conclusion that he had such knowledge. We may add that his failure to excuse his delay of fifteen years after the death of his father and nearly

a year after the death of his brother, Samuel, before instituting this action is equally significant.

[6] It is also claimed that there is no sufficient support for the finding that owing to the great lapse of time evidence could not be secured as to the payment or nonpayment of the claim. It is true that counsel on both sides seemed somewhat reluctant to question the witnesses, the examination having been apparently very brief; but the evidence showed without doubt that the only parties who could have positive knowledge of the fact were dead, and this, considered with the circumstance that such slight evidence was offered on both sides, would appear to justify the court's conclusion that the evidence was not available.

[7] Speaking generally, we think it must be said that there is no hard-and-fast rule as to the length of time that would bar such an action as this, that much depends upon the peculiar circumstances of the case; that a large discretion is confided to the trial judge, and the disposition of an appellate court is, and should be, to respect that discretion and not to interfere with his conclusion unless manifestly an injustice has been done. When we recall all the circumstances to which we have adverted, we cannot say that the decision was wrong. The responsibility for determining the question rested with the court below, and we think we are bound by the findings. The judgment is, therefore, affirmed.

Hart, J., and Chipman, P. J., concurred.