[Sac. No. 4391. In Bank.—August 27, 1931.]

F. C. WOLPERT, Trustee in Bankruptcy, etc., Appellant, v. DOROTHY L. GRIPTON, as Executor, etc., et al., Defendants; WALTER A. GRIPTON, Respondent.

Charles Kasch and John V. Filippini for Appellant.

Keith C. Eversole for Respondent.

WASTE, C. J.—This is an appeal from a judgment in favor of the defendant Walter A. Gripton, a chattel mortgagee, and against plaintiff, the trustee in bankruptcy of the mortgagor corporation, in an action brought ·by such trustee to have certain chattel mortgages declared invalid, for an accounting, and for the return of the property covered by the chattel mortgages, or the value thereof. ██ The cause was tried by the court sitting without a jury, and, the appeal being on the judgment-roll alone, it must be assumed that the evidence, not now before us, is ample to sustain the findings of the court below.

A complete *résumé* of the findings seems necessary. Among other things, the court found that the insolvent corporation, whose principal place of business is in the city and county of San Francisco, was created and organized under the laws of this state on February 10, 1923; that 2,201 of its 2,329 shares of issued stock were issued to the defendant Claude D. Plum, who, with his wife and a named third person constituted the board of directors of the corporation; that on May

5, 1923, the corporation and the respondent, Walter A. Gripton, entered into an unrecorded agreement in writing, wherein and whereby the latter agreed to loan and advance to the corporation the sum of $30,000 and, in the event the corporation needed further money, an additional $10,000, if and when requested, in consideration for which the corporation agreed to execute and deliver to the respondent its promissory note in the principal sum of $30,000, together with chattel mortgages as security therefor on its lumber mill, machinery, equipment, and all logs and lumber cut and manufactured by it; that, pursuant to the terms of said agreement, Gripton advanced and loaned $30,000 to the corporation, whereupon the latter did, on May 5, 1923, execute and deliver to respondent its promissory note in that sum, secured by two duly executed chattel mortgages on the personal property above described; that said two chattel mortgages were thereafter, and on June 5, 1923, duly recorded in the county of Mendocino, the situs of the property covered thereby, and were, on October 9, 1923, duly recorded in the city and county of San Francisco, the principal place of business of the corporation-mortgagor; that thereafter, and from time to time between July 5, 1923, and August 5, 1923, Gripton advanced and loaned to the corporation various additional sums aggregating $10,000, all of which future advances were also provided for and secured by the chattel mortgages theretofore executed and delivered; that in addition to the secured loans of $40,000, Gripton, between August 5, 1923, and September 27, 1923, advanced and loaned to the corporation various other and unsecured sums of money totaling $10,600; that from time to time, and as the loans were made, the corporation had duly executed and delivered to respondent its several promissory notes covering both the secured and unsecured loans; that on October 9, 1923, and with the consent and authorization of the corporation acting through its president and general manager, and not by reason of any fraud or conspiracy or attempt to secure a preference, Gripton peaceably and lawfully entered upon and took possession of the mortgaged property; that the agreement of May 5, 1923, wherein provision was made for the loans and evidences of indebtedness thereafter given and made, is valid, save and except a portion thereof relating to a certain bonus to be paid to respondent; that the notes

and mortgages executed and delivered by the corporation pursuant to the terms of the agreement with Gripton are, and each is valid as to the principal thereof, but not as to the interest therein provided for; that, at the time respondent entered upon and took possession of the mortgaged property, the corporation mortgagor was in default and respondent was acting solely to protect his security, and not by reason of any desire to secure a preference; that this present action, though purporting to be for the benefit of the corporation's creditors other than respondent, was in fact instigated by the defendant Plum, president and general manager of the corporation and its principal stockholder; that, with the exception of $3,535 paid in by the stockholders of the corporation, $1464.13 received for lumber sold, and $15,782.42 advanced by unsecured creditors, the $50,000 advanced and loaned by Gripton to the corporation constituted its entire capital investment, assets, and operating resources up to and including October 9, 1923; that on said date, and solely by reason of the corporation's default, and under and pursuant to the terms of the agreement between the parties, the respondent, upon due notice, declared the principal of the loans due and payable, and on the following day noticed for sale the property covered by the chattel mortgages; that five days thereafter, and on October 15, 1923, an involuntary petition in bankruptcy was filed against the corporation, and the proposed sale under respondent's chattel mortgages was thereupon restrained until further order of the bankruptcy court; that on November 3, 1923, the corporation was duly adjudged a bankrupt; that at the time of the filing of the petition in bankruptcy the assets of the corporation did not approximate the amount of respondent's secured loan; that no equity, therefore, exists in favor of the corporation or its trustee in bankruptcy; that the restraining order remained in force from October 15, 1923, to August 28, 1925, during all of which time the trustee in bankruptcy represented to respondent that he would secure a purchaser for the property and would pay respondent the amount ($40,000) of his secured loan; that such payment was never made, whereupon the respondent, Gripton, on August 21, 1925, filed before the referee in bankruptcy his petition for leave to foreclose his chattel mortgages; that the plaintiff, as successor to the original trustee

of the bankrupt corporation, resisted and opposed respondent's application, and the referee in bankruptcy thereafter made his order authorizing respondent's foreclosure of the mortgage liens, the order reciting the absence of any equity in the trustee by reason of the insufficiency of the mortgaged property to fully pay and discharge respondent's secured loans, and the expiration of approximately one and a half years without the trustee having secured a purchaser of the property at a sum equal to or in excess of respondent's lien upon the property; that on September 10, 1925, and upon due and legal notice, respondent caused all of the mortgaged property to be sold at public auction, and, being the highest and best bidder therefor, respondent himself bought in the property for the sum of $5,750, its reasonable worth, giving the corporation credit for this amount upon its promissory note for $30,000. The findings further recite that all of the respondent Gripton's transactions with the corporation, up to and including the foreclosure sale and buying in of the property, were had in good faith and without any intent or design to hinder, delay or defraud the corporation's creditors; that all during respondent's possession of the property he has properly cared for and maintained it, paying all accrued taxes, etc.; that it is true that on November 3, 1923, the corporation was indebted to unsecured creditors in the sum of $15,782.42, and to employees in the sum of $8,410, all in addition to respondent's secured loan of $40,000 and his unsecured loan of $10,600, but that *it is not true* that any debts were contracted by the corporation between May 5, 1923, and June 5, 1923, and it is "not true that none of the creditors of said [corporation] had any knowledge of the existence of said chattel mortgages or either thereof or of any advances made by said Gripton [respondent]"; that at all of the times from October, 1923, to December, 1925, the predecessor of the appellant trustee "had full knowledge of each and all of the matters which are herein·found as facts which occurred or existed prior to said 10th day of December, 1925, when and as the same occurred, and that such knowledge upon the part of said [predecessor trustee] was the reason that he instituted no proceedings during his said trusteeship for the purpose of recovering any of the property which is herein described". Upon these findings, the court concluded, as matter of law, that the agreement for the loans,

together with the several notes and chattel mortgages executed and delivered pursuant thereto, are and each is valid as to the principal sum, but not as to the interest; that the respondent was not guilty of fraud, but at all times acted in good faith and without any design to hinder, delay or defraud any of the corporation's other creditors; that the appellant trustee is guilty of laches; that respondent is the owner and entitled to the possession of the property sold upon the foreclosure of the chattel mortgages; and none of the corporation's acts constituted a preference. Judgment for respondent was accordingly entered, from which this appeal has been taken by the trustee, whose principal contention is that respondent's mortgages are void because of the delay intervening between their execution and recordation. Defendant Walter A. Gripton died since the entry of judgment, and Dorothy L. Gripton, executrix of his last will, has been substituted, and the title of the cause ordered amended accordingly.

■ Our law provides that a mortgage of personal property is void as against creditors of the mortgagor unless it is recorded in the office of the county recorder of the county in which the mortgagor resides, if the mortgagor be a resident of this state, and in the county in which the property mortgaged is situate. (Civ. Code, secs. 2957, 2959.) However, since an unrecorded chattel mortgage is good as between the parties thereto, a mere general creditor of the mortgagor is not in a position to attack its validity. (*Loosemore v. Baker*, 175 Cal. 420, 422 [166 Pac. 26]; *Lemon v. Wolff*, 121 Cal. 272, 275 [53 Pac. 801].) Only a creditor who has acquired a lien upon the mortgaged property by virtue of some legal proceeding, or who is armed with some process authorizing seizure of the property, can question its compliance with the formalities prescribed by the code. (*Lemon v. Wolff, supra.*) In the case of *Noyes v. Bank of Italy*, 206 Cal. 266, 269, 270 [274 Pac. 68], we held that under the Bankruptcy Act a trustee in bankruptcy is placed in the position of a lien creditor, and is thus entitled to attack an alleged void mortgage, thereby enabling him to protect the interest of general creditors against invalid liens and unlawful transfers. There can, therefore, be no question as to appellant's right to prosecute an action of this character.

His right of recovery, however, is dependent on matters to be presently considered.

The recordation of a chattel mortgage has been designed as a substitute for and the equivalent of the immediate delivery and continued change of possession made essential by section 3440 of the Civil Code to effect transfers of personal property in other cases. (*Ruggles* v. *Cannedy,* 127 Cal. 290, 296 [46 L. R. A. 371, 53 Pac. 911, 59 ¡Pac. 827].) Recordation should, therefore, be had immediately upon execution, or as soon thereafter as practical, in order to give notice to and bind third parties, otherwise the mortgage is void as to those persons enumerated in section 2957, *supra.* (*Ruggles* v. *Cannedy, supra,* p. 298; *Williams* v. *Belling,* 76 Cal. App. 610 [245 Pac. 455].) An unrecorded chattel mortgage, or one whose recordation has been unduly delayed, has been held to be void both as to antecedent creditors and those who became creditors of the mortgagor during the period of time between execution and recordation. (*Noyes* v. *Bank of Italy, supra,* p. 272; *United Bank & Tr. Co.* v. *Powers,* 89 Cal. App. 690, 694, 695, 265 Pac. 403.)

However, sections 2957 and 2959, *supra,* are qualified by and are to be read with section 2973 of the same code, which latter section provides, in part, that unrecorded mortgages of personal property "are nevertheless valid between the parties . . . and persons who, before parting with value, have actual notice thereof". In this connection, see *Ronning* v. *Way,* 18 Cal. App. 527, 530 [ 123 Pac. 615], and *Old Settlers Inv. Co.* v. *White,* 158 Cal. 236, 240 [110 Pac. 922].

The findings show that the recordation of the mortgages here assailed was delayed for a period of one month in the county where the property was situate, and for a period of five months in the county were the corporation mortgagor had its residence, assuming for present purposes that the principal place of business of a mortgagor corporation is its residence for purposes of recordation under section 2959, *supra.* (*Gallup* v. *Sacramento etc. Drainage Dist.,* 171 Cal. 71, 74 [151 Pac. 1142]; *Wright* v. *Bundy,* 11 Ind. 398.) The one month's delay in the county where the property was situate does not affect the validity of the mortgages, for the reason that the court below found, and the appeal being on the judgment-roll it must be assumed the finding is sustained by the evidence, that none of the claims of the

other creditors of the corporation, whom the appellant trustee represents, had been created or had arisen prior to June 5, 1923, the date of recordation in Mendocino County, the situs of the property. We have already pointed out that, under the authorities, a chattel mortgage is not void as to those who did not part with or acquire any rights or become creditors of the mortgagor either prior to or during the period of time between execution and recordation. (*United Bank & Tr. Co.* v. *Powers, supra,* p. 694.) Nor do we think the five months' delay in the county of residence is fatal to the validity of respondent's mortgages. Among other things, appellant's complaint alleges that the creditors of the corporation, other than respondent, were without knowledge of the existence of respondent's chattel mortgages, or of any loans or advances made by him to the corporation. This allegation is found to be untrue, the trial court declaring that it is "not true that none of the creditors of said [corporation] had any knowledge of the existence of said chattel mortgages or either thereof or of any advances made by [respondent]". All intendments and presumptions being in favor of the findings and judgment of the court below, the foregoing finding may fairly and reasonably be construed to mean that the other creditors of the corporation had become such well knowing of the existence of respondent's mortgages. Under section 2973, *supra,* and the cases construing that section, such actual notice of the existence of respondent's mortgages precludes the other creditors or their representative [the appellant trustee] from challenging their validity.

There is a further and additional ground determinative of this appeal. The court below has found that the appellant is precluded from prevailing in this action by reason of laches. In this connection, it is found that from October, 1923, to December, 1925, a period in excess of two years, the original trustee [appellant's predecessor in office] had full knowledge of all the facts now relied on as a basis for the claim of invalidity of respondent's mortgages, and during all of that time had done nothing toward securing an adjudication of the question, other than causing the bankruptcy court to temporarily restrain respondent's threatened foreclosure of the mortgages. This action was not filed until April 9, 1926. Equity abhors stale claims.

There is no hard-and-fast rule, either as to the lapse of time or the circumstances which will justify the application of the doctrine of laches. In addition to mere lapse of time, there must exist some circumstances from which the defendant may be prejudiced, or there must be such a lapse of time that it may be reasonably supposed that such prejudice will occur if the remedy is allowed. (*Cahill* v. *Superior Court,* 145 Cal. 42, 47 [78 Pac. 767].) ▮ Laches is a question of fact, on the evidence, and must be determined by a consideration of all the circumstances of each particular case. (*Kleinclaus* v. *Dutard,* 147 Cal. 245 [81 Pac. 516].) It is a question to be determined primarily and very largely by the trial court, and an appellate court will not interfere with its discretion in this respect unless manifest injustice has been done, or unless its conclusion cannot reasonably be held to find support in the evidence. (*Suhr* v. *Lauterbach,* 164 Cal. 591, 594 [130 Pac. 2] ; *Pratt* v. *Pratt,* 43 Cal. App. 261, 271, 279 [184 Pac. 956].) As we have not the evidence before us in this case, we are not in a position to declare the trial court's finding and conclusion in this regard to be unwarranted. The circumstances disclosed by the findings are, in our opinion, sufficient to justify the application of the doctrine of laches to appellant's claim.

▮ The provision for a usurious rate of interest on the loans secured by respondent's mortgages does not affect the validity of the principal sum due or the mortgages securing the same. (*Haines* v. *Commercial Mortgage Co.,* 200 Cal. 609, 622 [53 A. L. R. 725, 254 Pac. 956, 255 Pac. 805].) Moreover, no part of the principal sum or interest has ever been paid to the respondent. In this opinion we have given no consideration to the real property mentioned in the complaint, for in appellant's opening brief it is stated that the real property "is not any part of the subject matter of the present litigation".

The findings of fact set out at length in this opinion negative all claim of actual fraud. Walter A. Gripton advanced substantially all of the funds available to the corporation during the period of its solvency. He was never reimbursed. There is now owing to his executrix, the substituted respondent, approximately $44,850, which is undoubtedly uncollectible. To deprive the estate and respondent not only of this sum of money but also of the meager

security the executrix holds therefor, would, under the circumstances disclosed by the findings, be highly inequitable. The conclusion of the court below is a proper one. Our examination of the appellant's briefs discloses nothing suggesting a different determination.

The judgment must be, and it is, therefore, affirmed.

Preston, J., Seawell, J., Langdon, J., and Curtis, J., concurred.

Rehearing denied.