[Civ. No. 3991. Fourth Dist. Sept. 6, 1950.]

HOLLYWOOD STATE BANK (a Banking Corporation), Appellant, v. D. D. COOK, as Administrator, etc., et al., Respondents.

Walter G. Danielson for Appellant.

Theron Lamar Caudle, Assistant United States Attorney General, Ellis N. Slack, Helen Goodner and Virginia H. Adams, Special Assistant United States Attorneys General, Ernest A. Tolin, United States Attorney, D. H. Mitchell and Bernard B. Laven, Assistant United States Attorneys, James Don Keller, District Attorney, and Duane J. Carnes, Deputy District Attorney, for Respondents.

MUSSELL, J.—This is an appeal by plaintiff from an adverse judgment in an action to foreclose two chattel mortgages given by Cal A. Cook covering certain machinery located in San Diego. These mortgages secured two notes given in February and May, 1946, and were duly recorded.

At the time each of these mortgages was executed, Cook also executed a "collateral security agreement" providing in part:

"In consideration of any financial accommodations given, or to be given, or continued to the undersigned by Hollywood State Bank (hereinafter called the Bank) and as collateral security for the payment of any indebtedness, obligation or liability of the undersigned to said bank now or hereafter

existing . . . the undersigned does hereby assign, transfer to, and deposit with the said bank all property this day delivered by the undersigned to the bank, or which may now be held by the bank, or which may hereafter be delivered by the undersigned to the bank during the existence of this agreement . . . the power of sale and other powers hereinafter given shall apply to all collaterals of any kind, nature or description, including . . . negotiable instruments . . . at any time during the existence of this agreement in possession or control of said bank. . . . belonging to, for the account of or subject to the order of the undersigned.''

Between October 16, 1946, and April 2, 1947, Cook borrowed additional moneys from the bank, signing five notes therefor, totaling about $47,000.

The United States government acquired various tax liens on the property of Cook amounting to $7,920.75, the first assessment being levied on November 6, 1946, and notice being recorded three days later. Subsequent to April 2, 1947, it acquired additional tax liens, totaling $13,552.66. County taxes also accrued amounting to $2,778.06 for 1947-1948 and $1,711.05 for 1948-1949. None of the county or government taxes have been paid.

At the time of his death, Cook was indebted to plaintiff in a large amount. By stipulation of the parties, the property covered by these mortgages was sold by the administrator for $18,158.75, from which the plaintiff was paid $5,549.60, being the full balance specifically covered by the mortgages. The remaining $12,609.15 is held by the administrator pending the outcome of this action. It is admitted that the estate is further indebted to the plaintiff in the amount of $41,071.93 on the five notes issued from and after October, 1946.

There is no substantial dispute as to the facts. The court found that the plaintiff had been paid in full to the extent of its secured claims and that the remaining debts were not secured by these mortgages.

The plaintiff contends that these mortgages, together with the ''collateral security agreements,'' were intended as and constitute security for all indebtedness of decedent to plaintiff at the time the mortgages were executed or which was thereafter created.

The principal questions here presented are whether the mortgages can be held to be security for future advances, and if so, whether the plaintiff has the prior lien with respect to the federal and county taxes.

Each of the two chattel mortgages involved described the particular promissory note it secured and stated that it was security for that note. Neither mortgage indicated that it was security for any future advances or for any other loan. Neither mortgage referred to the collateral security agreements and neither of these agreements made any reference to the chattel mortgages. The collateral agreements were not recorded and were not entitled "mortgages" and did not, in our opinion, enlarge the terms of the chattel mortgages.

Section 2957 of the Civil Code provides in part that:

"A mortgage of personal property . . . is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value, unless:

"4. The mortgage . . . is recorded in the office of the recorder of the county where the mortgagor resides at the time the mortgage is executed, and also in the county where the property mortgaged is located. . . .

"5. Each such mortgage is clearly entitled on the face thereof, apart from and preceding all other terms of the mortgage, to be a mortgage of . . . chattels. . . ."

The purpose of the statute in requiring recordation of chattel mortgages is to prevent secret liens upon and interests in personal property. (*Ruggles* v. *Cannedy*, 127 Cal. 290, 297 [53 P. 911, 59 P. 827, 46 L.R.A. 371].)

If the collateral security agreements were to be regarded to extend the mortgages to secure future loans, those agreements, not being recorded, would be void as against creditors of the mortgagor. (*Wolpert* v. *Gripton*, 213 Cal. 474, 480 [2 P.2d 767].)

The correctness of the trial court's conclusion that the chattel mortgages secured only the two notes which were paid in full is further supported by evidence that the bank treated the first three loans as "coll. secured" and the remaining four notes as "unsecured." Moreover, the evidence shows that other security was given by the decedent to the bank, to wit: an assignment to the bank of the contract on account of which all of the loans were made. It also appears that the bank withheld from the assigned account amounts which were credited to decedent's notes.

Plaintiff cites the case of *Rutherford* v. *Eyre & Co.*, 174 Ore. 162 [148 P.2d 530, 152 A.L.R. 1172], in support of its claim that the chattel mortgages were to secure loans other than

those described therein. However, that case is distinguishable from the case at bar in that in the Rutherford case the chattel mortgages stated that they were for future advances. The amount of the contemporaneous loan was set forth as was the maximum amount to be loaned (a larger amount than the contemporaneous loan). The contemporaneous agreement referred to in the mortgage stated that the mortgage was security for future loans.

Likewise, in *Weiser Loan & Trust Co.* v. *Comerford*, 41 Idaho 172 [238 P. 515], cited by plaintiff, the agreement signed contemporaneously with the chattel mortgage stated that it was executed in conjunction with the mortgage and left no doubt as to the intent of the parties that the chattel mortgage was made to secure future loans by a contemporaneous agreement, which agreement was not acknowledged.

In *Lemon* v. *Wolff*, 121 Cal. 272 [53 P. 801], and *Wolpert* v. *Gripton, supra,* it is held that a mortgage which does not comply with the requirements of section 2957 of the Civil Code is void as to creditors of the mortgagor who have acquired a lien on mortgaged property. In *Lemon* v. *Wolff, supra,* it was held that a mortgage to secure future advances is valid as between the mortgagor and mortgagee even though not recorded and that only creditors of the mortgagor may take advantage of the failure to comply with the recording statute.

In *Tully* v. *Harloe*, 35 Cal. 302 [95 Am.Dec. 102], also cited by plaintiff, it was contended that a mortgage in the amount of approximately $3,000, given as security for a present loan of $1,704 was void. The court rejected this contention, holding that the obvious intention in that case was to secure future advances in the amount of the difference between $3,000 and $1,704.

Plaintiff argues that section 2975 of the Civil Code protects a mortgagee as to future advances up to the maximum amount stated therein. However, the wording of the section indicates that it must appear from the mortgage itself that it is given to secure future advances, and that an ''expressed maximum'' must also appear.

It is conceded that the chattel mortgages were recorded prior to the tax liens, but they did not cover future advances, and the future advances were made after the government recorded its liens.

We are impelled to the conclusion that the chattel mortgages in question were not security for future advances and that the bank acquired no lien as against general creditors by

virtue of them. Since we have arrived at this conclusion, it is not necessary to consider the other questions raised on this appeal.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied September 27, 1950, and appellant's petition for a hearing by the Supreme Court was denied November 2, 1950.