J. A. RUDOLPH v. THE NATIONAL LIVE STOCK COMMISSION COMPANY.

No. 15,217.   (92 Pac. 1103.)

SYLLABUS BY THE COURT.

1. CONVERSION—*Sale of Mortgaged Personalty—Question for the Jury.* Where T., the owner, delivered to R. in Cowley county fifty steers to be pastured there, and afterward, while they were in R.'s pasture in that county, executed a mortgage on "sixty head of three-year-old native steers, all dehorned and all branded 'T' on right hip," reciting that they were all the steers of that brand and description owned by T., and that they were all in Butler county; and the description given in the mortgage applied to the cattle in R.'s pasture, except as to location; and R., after the mortgage was filed but without actual knowledge of its existence, assisted T. in disposing of the steers so in his possession, and was sued for conversion by the assignee of the mortgage, a question was presented for a jury to determine: whether the steers so disposed of were part of those mortgaged.

2. CHATTEL MORTGAGES—*Description of the Property—Notice.* If a person of ordinary prudence, reading such mortgage, and making such reasonable inquiries as the mortgage itself suggests, would identify the cattle in the pasture and so disposed of as part of those so mortgaged, then the mortgage, being duly filed in the proper office, is sufficient to charge third persons with notice; otherwise not.

Error from Cowley district court; CARROLL L. SWARTS, judge. Opinion filed December 7, 1907. Reversed.

STATEMENT.

THE National Live Stock Commission Company, hereinafter referred to as the National company, is a corporation doing business in Chicago and St. Louis. J. A. Rudolph is a farmer and agistor residing in Cowley county. On or about April 25, 1901, W. F. Thomas, then residing in Butler county, took to Mr. Rudolph's farm in Cowley county fifty dehorned native steers, three years old, branded "T" on the right hip, and left them with Rudolph to be pastured. The steers remained in Rudolph's possession and were pastured by him until September 10, 1901, for a compensation agreed upon. On that date Thomas called for the cattle to ship them out, but, not having the money due for the pasturage, proposed to Rudolph that they be shipped for sale in his (Rudolph's) name, and that an order should be given to him for the proceeds, less $87.50, due for the pasturage. This was agreed upon, and the cattle were accordingly billed and shipped in Rudolph's name, together with a cow belonging to Rudolph, all consigned to the National company. Rudolph gave to Thomas the following instrument:

"LATHAM, KAN., September 10, 1901.
"*National Live Stock Commission Co., Chicago, Ill.:*
"GENTLEMEN—Mr. Thomas has two cars of cattle for you consigned in my name. You send me $87.50 and net proceeds for one cow in the bunch. Send to First National Bank of Winfield, Kansas, and the balance to Mr. Thomas, and oblige,    Yours truly,
J. A. RUDOLPH."

Thomas and Rudolph loaded the cattle in the cars in Cowley county, Kansas, and they were received by the National company at East St. Louis on September 12, in due course. Thomas, who accompanied the cattle, presented the above letter to that company; the cattle were sold on the market, and the proceeds disposed of by the National company as directed in the letter. Thomas received $10 in cash, and $1719 was remitted

for his account to a bank in Augusta; the balance, $123.93, proceeds of the cow and $87.50 for pasturage, was remitted to a bank in Winfield for Rudolph.

On May 10, 1901, Thomas executed to the Northwestern Live Stock Commission Company of Kansas City, Kan., a chattel mortgage upon certain cattle described therein, as follows:

"Sixty head of three-year-old native steers, all dehorned and all branded 'T' on right hip, and are all the cattle I own of this brand or description."

This mortgage contained also the following provisions:

"This mortgage is a renewal of one made September 13, 1900, for $2019.90, due in two hundred and forty days, by first party.

"The same being now located on my farm four miles north of Odessa, Butler county, Kansas, and when marketed said cattle are to be shipped and consigned for sale to the Northwestern Live Stock Commission Company, at the Kansas City stock-yards."

This mortgage was dated May 10, 1901, and was filed for record in the office of the register of deeds of Butler county, May 14, 1901. Neither Rudolph nor the National company had any knowledge of this mortgage, nor any notice thereof except such as the filing imparted, until three weeks after the cattle were so sold on the market, when the Northwestern company informed the National company of their mortgage. The Northwestern company then demanded the net proceeds of the cattle from the National company, and afterward sued to recover it. Pending the suit the latter company paid $1000 to the Northwestern company, and took from it an assignment of the mortgage and notes secured thereby, and also an assignment of their right of action against Rudolph. Thereupon that suit was dismissed, and this action was commenced by the National company against Rudolph. On the trial the district court directed a verdict for the plaintiff, upon which judgment was rendered for $1000 and interest

against Rudolph, who has brought the case here for review.

*G. H. Buckman, A. M. Jackson,* and *A. L. Noble,* for plaintiff in error.

*Torrance & Bloss,* and *Hackney & Lafferty,* for defendant in error.

The opinion of the court was delivered by

BENSON, J.: The plaintiff in error specifies several rulings of the district court which he assigns as error. We find nothing in the record, however, upon which it is necessary to comment except the rulings of the court directing a verdict for the defendant in error, and in refusing to set aside the verdict and grant a new trial.

The mortgage was not executed until fifteen days after the fifty head of cattle were delivered to Rudolph. It is true that this was a renewal of an earlier mortgage, but there is no evidence that the first mortgage was ever filed, or that Rudolph had notice of it in any way. The cattle described in the mortgage, according to the recitals therein, were, when it was executed, on Thomas's farm, four miles north of Odessa, in Butler county; but the cattle in question were not then in Butler county, but were in Cowley county, on Rudolph's farm. There were sixty of the former and fifty of the latter. Otherwise the description in the mortgage applies to the cattle in the pasture as well as to those in the mortgage. Upon these facts, so shown by the evidence, we cannot say as a matter of law that Rudolph was chargeable with constructive notice of the mortgage, and there is no evidence that he had actual notice. He certainly had no notice of this mortgage when he took the cattle, for it had not then been made. The question remains, however, whether he had, or was chargeable with, notice of the mortgage after it was made and before he participated in the disposition of the property. In order to impart notice to Rudolph the mortgage should "contain either some hint which

would have directed the attention of those reading it to some source of information beyond the words of the parties to it, or something which will enable third persons to identify the property, aided by inquiries which the mortgage indicates and directs, or a description which distinguishes the property from other similar articles." (*Golden and others v. Cockril,* 1 Kan. 259 [syllabus], 1 Am. Dec. 510.)

"Generally, . . . a description in a chattel mortgage which will enable a third person, aided by inquiries which the instrument itself suggests, to identify the mortgaged property, is sufficient." (*Mills v. Kansas Lumber Co.,* 26 Kan. 574, syllabus.)

To the same effect see *Tootle, Hanna & Co. v. Lyster,* 26 Kan. 589. In *King v. Aultman & Co.,* 24 Kan. 246, the description in the mortgage was as follows: " 'One bay mare, one hind foot white, and white spot in face, branded "G," 17 hands high, five years old,' . . . in the possession of said mortgagors, in Clay county, Kansas." (Page 247.) This description was correct except that the brand was "J," and the mare was not 17 hands high, but was 15¾ hands high. The mare was replevied by the mortgagees from a purchaser from the mortgagor, and the question was whether the purchaser was bound by the record of the mortgage. The trial judge in that case instructed the jury as follows:

"Mr. King was bound to take notice of the chattel mortgage and contents; that is, he is presumed to have known at the time he purchased the mare just what the chattel mortgage contained. Under these circumstances, and the other circumstances of the case, if you believe that the defendant, by examining the mortgage, would have known that the intention was to describe the mare in question, you must find for the plaintiffs; or if there was sufficient in the mortgage to cause the defendant King to make inquiries by which he might reasonably have discovered that the intention was to mortgage the mare in question, then you must find for the plaintiffs. It is not necessary that there should be a perfect description of the mare, but it must be such

as would cause a person of ordinary prudence to make inquiries which would lead to a discovery of the fact that the mare was intended to be mortgaged." (Page 248.)

In *Waggoner v. Oursler,* 54 Kan. 141, 37 Pac. 973, the description in the mortgage was as follows: "45 head of three-year-old steers, 59 head of two-year-old steers, now being pastured on the Pottawatomie reserve by said party of the first part." (Page 141.) Fifty head of the steers were afterward sold by the mortgagor to a purchaser, who, having transferred them to another, was sued by the mortgagee for conversion. The question was whether the purchaser was chargeable with notice of the mortgage from its filing. Mr. Justice Johnston, speaking for the court, said:

"The trial court correctly stated the rule that a description which will enable third parties, aided by inquiries which the instrument itself suggests, to identify the property is sufficient, and that a slight variance in the description would not invalidate the mortgage if from the entire description third persons, aided by inquiries which the instrument itself suggests, could identify the property." (Page 143.)

In *Dendy v. Bank, ante,* p. 301, Mr. Justice Mason said:

"The description which the mortgage gave of the cattle was defective. They were described as kept at a particular ranch, whereas they were in fact in another part of the county. Whether notwithstanding this partial misdescription the mortgage still gave sufficient information by which the cattle could with reasonable inquiry have been identified was a question for the determination of the jury." (Page 303.)

The filing of the mortgage imparted notice of its contents. It contained a particular description, and a recital that the cattle were all that Thomas owned of that description, and also a recital that the cattle were all on his farm in Butler county. This presented a question of fact for the jury: whether the cattle in question, in Rudolph's pasture, could, with the de-

-scription given in the mortgage, aided by such reasonable inquiries as that instrument itself suggested, be fairly identified as part of the mortgaged property. If a person of ordinary prudence, reading such mortgage and making such inquiries, would so identify them, it is sufficient; otherwise not.

The judgment is reversed and a new trial ordered.