No. 20,257.

FRED EHRKE, *Appellant,* v. E. M. TUCKER et al., and THE ALLEN STATE BANK, Intervenor, *Appellees.*

SYLLABUS BY THE COURT.

1. CHATTEL MORTGAGE—*Description of Cattle—Must Furnish Reasonable Basis for Identification.* It is not necessary that the description of cattle intended to be included in a chattel mortgage shall be so definite that third parties can identify the property from that alone. It is enough if the description and the inquiries suggested by it furnish a reasonable basis for identification; but the suggestions which indicate the line of inquiry must be taken from the mortgage itself and not rest alone in the mind of the mortgagor or mortgagee.

2. CHATTEL MORTGAGE—*Insufficient Description of Property.* In the present case it is held that the description of certain cattle in a mort-

Ehrke v. Tucker.

gage, together with inquiries suggested by it, did not fairly lead to the identification of the cattle in controversy, and that as the plaintiff failed to produce substantial evidence in support of his claim that the cattle in controversy were included in the mortgage, no error was committed in directing a verdict in favor of defendants.

Appeal from Franklin district court; CHARLES A. SMART, judge. Opinion filed November 11, 1916. Affirmed.

*F. M. Harris,* of Ottawa, *W. H. H. Piatt,* and *Thomas R. Marks,* both of Kansas City, Mo., for the appellant.

*Wilbur S. Jenks,* and *W. B. Pleasant,* both of Ottawa, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This action was brought to recover the possession of sixty-nine head of cattle.

In the spring of 1913 J. A. Fager bought cattle from the Knorpp Cattle Loan Company of Kansas City, and to secure notes given in payment of the cattle he executed two chattel mortgages, one upon 223 head of Panhandle yearlings, branded M on the left hip, and the other upon 100 head of native Kansas yearlings, mostly dehorned and branded O on the left hip, and thirty head of red native Kansas yearlings, marked with a slash on the left hip. Before the notes became due they were assigned by the cattle company to the plaintiff, Fred Ehrke, and as the notes were not paid when they became due Ehrke took a new note and mortgage to himself in which the property was described as follows:

"Two hundred twenty-three (223) head of coming two-year-old native Panhandle steers and heifers, all branded M on left side and 9 on left thigh, also one hundred (100) head of coming two-year-old native Kansas steers, branded thus, O on right hip. The above described cattle are now on the premises of the party of the first part two miles north of St. Paul, Neosho County, Kansas, where they are to be kept until the expiration of this instrument."

Fager again applied for an extension, which Ehrke granted, and in June, 1914, a new note and mortgage were executed and filed, but before the execution of that mortgage and in February, 1914, E. M. Tucker and Harry Tucker, without personal knowledge of the existing mortgage, purchased from Fager seventy head of two-year-old native Kansas steers and took

them to their premises in Osage county, and no question was raised as to the validity of the transfer until the fall of 1914. About that time Fager disappeared and Ehrke, learning of the sale of cattle to the Tuckers, claimed that the Tucker cattle were a part of those included in his mortgage and shortly afterwards brought this action of replevin. The Tuckers defended upon the ground that the cattle purchased by them were not a part of those described in the plaintiff's mortgage, and further that the mortgage in existence when the purchase was made had been released. When the evidence was introduced the court ruled that the plaintiff had failed to show a right of recovery and directed a verdict in favor of the defendant.

The question submitted here is: Can the mortgage, under which the plaintiff claimed, be applied to the cattle in controversy? It is not claimed that any of them are included in those described in the mortgage as 223 head of Panhandles, nor the thirty head of natives branded on the left hip with a slash, but it is contended that they are a part of those described in the mortgage as two-year-old native steers branded O on right hip. The evidence does not show that any of the Tucker cattle were branded in that way, and no brand like it was found upon them. The cattle were purchased from Fager, who executed the mortgage, but it appears that he was buying and selling cattle from time to time and had about 400 head of cattle when the sale was made to the defendants. The cattle were not kept on his premises at the place described in the mortgage, but were kept at a number of places where feed could be obtained for them, in the region round about his place. Plaintiff had not seen the cattle prior to the sale made to the defendants, and the mortgage, which was taken by plaintiff about four months after the Tuckers had purchased their cattle, recited that the 100 native Kansas steers branded O on the right hip were still on Fager's premises two miles north of Saint Paul, where they were to be kept until the expiration of the mortgage. It appears that in January, 1914, plaintiff sent his agent Stotts to Neosho county to inspect the mortgaged cattle, and at that time Fager pointed out certain red, roan and brindle cattle as those included in plaintiff's mortgage, but Stotts did not find any of them branded O on the right hip. He did not make a close or careful examination,

as he says that he did not look for or pay any particular attention to brands, the principal identifying mark used in describing the cattle in the mortgage. While he stated that he saw all of the mortgaged cattle, it appears that he came to that conclusion because Fager said the cattle shown him were the mortgaged cattle. At that time Fager had about 400 head of cattle, and many more than seventy head of native cattle of the colors and age of those described in the mortgage. It appears that his cattle were held in bunches at a half dozen or more places, some of which were twenty miles away from the place named in the mortgage. After plaintiff learned that cattle had been sold to Tucker, he sent an expert to examine the Tucker cattle, but the expert was unable to find a brand on them that corresponded at all with the one described in the mortgage. John Fager, a son of the mortgagor, testified that the Tuckers got their cattle at the farms of the Showalters, near Saint Paul, and that their cattle were there when Stotts inspected them, and further that the cattle bought by the Tuckers were obtained from among those examined by Stotts. In that connection, however, he testified that most of the cattle were two-year-old natives which his father bought from a man named Stinger in the spring of 1913.

It devolved upon the plaintiff, of course, to prove that the cattle in Tucker's possession were those described in the mortgage. To recover he must produce substantial evidence tending to show that fact, and if he did so the case should have been submitted to the jury. The defendants are presumed to have had knowledge of the contents of the chattel mortgage, and if by the description there given, aided by inquiries which it would naturally suggest, the cattle could have been identified, the description would have been sufficient to bind them. (*Waggoner v. Oursler*, 54 Kan. 141, 37 Pac. 973; *Rudolph v. Commission Co.*, 76 Kan. 789, 92 Pac. 1103.) A partial misdescription does not invalidate the mortgage (*King v. Aultman & Co.*, 24 Kan. 246), but in determining whether a third party, aided by inquiries suggested by the mortgage, could have identified the property, the whole description is to be taken into consideration. The suggestion which indicates the line of inquiry must come from the mortgage itself, and can not rest alone in the minds of the mortgagor and mortgagee. If the defendants

had had actual knowledge of the mortgage executed by Fager, and had made inquiry, they would have looked first for the principal mark of identification, viz., the brand O, and not finding it on any of the cattle purchased, would have been reasonably well assured that the cattle which they purchased were not included in the mortgage. This assurance would have been strengthened when they noted that the cattle they had purchased were not kept at the place designated in the mortgage. It is true that the cattle were purchased from Fager, who had executed the mortgage, but he had many more cattle of the color and age of those described in the mortgage. The descriptions, therefore, of color, age and location in the mortgage, did not furnish a basis for identification. If the Tucker cattle had been the only native Kansas two-year-old steers of the class named in the possession of Fager an inquiry may have led to the identification, but subsequent purchasers are not required to pursue inquiries where, as here, the entire description led in a different direction and indicated so clearly that the cattle in question were not intended to be included in the mortgage. The law contemplates that mortgages, to be valid, shall be sufficiently definite in description so as to give notice to subsequent purchasers and mortgagees, and afford them protection against imposition. One who seeks to obtain and hold a mortgage lien on cattle must, for the protection of third parties, give a more definite description of them than was done in this instance. In directing a verdict, the evidence in favor of the plaintiff with every reasonable inference that can be drawn from it must be taken as true, and it is said that some evidence tends to establish identity. Verdicts can not be based on a mere scintilla of evidence, and unless substantial proof is offered in support of the claims of the plaintiff, a verdict against him may be directed. In this case the trial court determined that no substantial evidence was produced that would furnish a basis for a verdict, and its judgment must be affirmed.