[Civ. No. 3438. Third Appellate District.—March 5, 1928.]

UNITED BANK AND TRUST COMPANY OF CALIFORNIA (a Corporation), Respondent, v. ED POWERS, Appellant.

692

Nutter, Hancock & Rutherford and A. P. Hayne for Appellant.

Hawkins & Hawkins and Louttit, Stewart & Louttit for Respondent.

PLUMMER, J.—Plaintiff had judgment in an action for the conversion of certain personal property alleged to be covered by a chattel mortgage in favor of the plaintiff and wrongfully converted by the defendant to his own use. From this judgment the defendant appeals.

During the month of February, 1922, by an instrument dated February 2, acknowledged February 17 and recorded February 18, 1922, one Joe S. Gonsalves purported to mortgage to the plaintiff certain personal property described in said instrument as follows: Sixty head of Holstein cows and increase, 60 tons hay, one Holstein bull, two horses, all situate on the ranch of Joe Gonsalves, located three miles northwest of Ripon, San Joaquin County, California.

The record shows that this instrument covered all the cows belonging to the mortgagor Gonsalves at that time. At a period some seventeen months later, to wit, on or about the sixth day of July, 1923, Gonsalves executed a chattel mortgage, purporting to cover certain described cattle, to the defendant in this action. The record shows that some time prior to the date of the execution of this mortgage the defendant Powers had sold a parcel of real estate to said Gonsalves. That on the sixth day of July, 1923, Gonsalves was in default in an installment payment agreed to be paid on account of the purchase price of said real property, and

then and there executed two mortgages in favor of the defendant Powers, one of which covered other property than that included in the plaintiff's mortgage. Thereafter, and on or about the twenty-first day of December, 1924, the defendant Powers took possession of all of the property referred to herein under the mortgage executed to him by Gonsalves, as just stated, and proceeded to make sale thereof. Thereupon the plaintiff herein began this action for the recovery of the value thereof. It appears that only twenty-nine head of the cows mortgaged to the plaintiff were discovered and identified, and it was for their value only that the trial court awarded judgment to the plaintiff.

Upon this appeal the defendant makes the following points for reversal:

1st. That the mortgage to plaintiff was and is void against the defendant by reason of the indefinite description of the cattle;

2d. That if plaintiff's mortgage was originally valid, plaintiff's rights thereunder have been lost because it permitted other cattle to be commingled with those covered by the mortgage so that the mortgage description became valueless as a clue for identifying the cattle;

3d. That the mortgage to the plaintiff is and was invalid as against defendant as an existing creditor, because it was withheld for fifteen days from record without any excuse therefor;

4th. That the mortgage of plaintiff did not cover calves and heifers, since it described the cattle as cows, etc.;

5th. That plaintiff's measure of recovery is the extent of its lien at the time of conversion, and that the court made no finding upon this point;

6th. That the trial court erred in excluding the record of the pendency of a prior action, from the evidence, etc.;

7th. That at the time of the alleged conversion plaintiff had no right to the possession of the property, since it had not exercised its option to take possession and had not demanded of defendant the possession of said cattle.

As to the 5th, 6th, and 7th assignments of error it may be said in a few words that an examination of the record shows them to be without merit. ██ The amount shown to be due the plaintiff from Gonsalves is such that if any finding had been had thereon, it necessarily would have

shown a sum greatly in excess of the judgment awarded the plaintiff in this action. Hence, the defendant is not in a position to complain. ■ The reference in the 6th assignment of error is to an action begun by the plaintiff against Gonsalves to foreclose the mortgage referred to herein. This statement shows it was not an action between the plaintiff and this defendant, nd has no relevancy whatever to this particular action. Had it been introduced into the record it would not have constituted any defense to the prosecution of this action or constituted a bar to the prosecution against the defendant for the unlawful conversion of the property mentioned in the chattel mortgage. ■ The record shows that the property covered by the plaintiff's mortgage was taken by the defendant and sold by him prior to the beginning of this action. The court has found such conversion to be wrongful. Therefore, no demand was necessary. (*Mier* v. *Southern California Ice Co.*, 56 Cal. App. 512 [206 Pac. 83]; *Daggett* v. *Gray*, 110 Cal. 169 [42 Pac. 568]; *McNally* v. *Connolly*, 70 Cal. 3 [11 Pac. 320]; *Harpending* v. *Meyer*, 55 Cal. 555.)

■ As to the third assignment of error, the plaintiff in this action asks, if the court is at all in doubt as to the law involved, to be permitted, under section 956a of the Code of Civil Procedure (Stats. 1927, p. 583), to make proof that the chattel mortgage executed by Gonsalves to the plaintiff, though bearing date of February 2, 1922, was in truth and in fact executed on the seventeenth day of February, 1922. We think the granting of this request, under the circumstances disclosed by the record in this action, unnecessary. Our attention has not been called to anything in the transcript, nor have we been able to discover any testimony therein indicating that the appellant in this action is in a position to take advantage of the lapse of time between the date of plaintiff's mortgage and the date of its recordation, assuming, for the purposes of this decision, that the number of days so indicated actually intervened between its execution and recordation, for the simple reason that the record does not show that the appellant parted with any rights, acquired any rights, had any business transactions with the mortgagor Gonsalves, or became a creditor of said Gonsalves during such period of time. The law is well established in

this state that in such circumstances the appellant is unharmed and has nothing of which to complain.

In *Williams* v. *Belling,* 76 Cal. App. 610 [245 Pac. 455], the court had before it this identical question, and there said: "By section 2957 of the Civil Code it is provided that a mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers and encumbrancers of the property in good faith and for value unless it is acknowledged or proved, certified, and recorded in like manner as grants of real property; and in *Ruggles* v. *Cannedy,* 127 Cal. 290 [46 L. R. A. 371, 53 Pac. 911, 59 Pac. 827], it is held that the recordation of a chattel mortgage, having been designed by the statute as a substitute for and the equivalent of the immediate delivery and continued change of possession formerly required in this state, should be had immediately or as soon thereafter as practical upon the execution thereof in order to give notice to and bind third parties.

"In the instant case it might fairly have been inferred that fourteen days had elapsed between the delivery of the mortgage and its recordation. Such delay, although not affecting its validity between the parties (*Summerville* v. *Kelliher,* 144 Cal. 155 [77 Pac. 889]), would, if not shown to be excusable, render the mortgage void as to creditors and encumbrancers, whose claims were created during the interval. (*Ruggles* v. *Cannedy, supra; Old Settlers' Investment Co.* v. *White,* 158 Cal. 236 [110 Pac. 922]; Civ. Code, sec. 2957; *In re Hansen,* 268 Fed. 904.)" See, also, *Brown* v. *O'Neal,* 95 Cal. 262 [29 Am. St. Rep. 111, 30 Pac. 538]; *Feeley* v. *Boyd,* 143 Cal. 282 [65 L. R. A. 943, 76 Pac. 1029]. Other cases might be cited, but the foregoing are sufficient to show the rule which we have stated to be firmly established, and that assignment of error number three is untenable.

Assignment No. 4 relates to the increase of the cattle mortgaged. By the terms of the mortgage the increase, that is, the increase of the cattle according to the laws of nature, would be covered by the mortgage. The law is well settled in this state that such a mortgage is valid, and citation of authorities is not necessary.

Proceeding in the inverse order, we are thus brought to a consideration of appellant's second assignment, to wit:

If the mortgage was originally valid, have the plaintiff's rights thereunder been lost by reason of the commingling of other cattle with the mortgaged band, by the mortgagor Gonsalves? The record shows that some time during the year 1923, at what period the testimony leaves uncertain, Gonsalves, purchased a number of other cattle, and that at one time between the execution and delivery of the plaintiff's mortgage in February, 1922, and the taking possession of the band of cattle involved in this action by the defendant on December 1, 1924, Gonsalves had in his possession cattle to the number of about 80 head. That during the period of time covered by both the mortgages executed to the plaintiff and the defendant, Gonsalves bought and sold several head of cattle, and the argument is made that where a mortgagee consents to such intermingling of other cattle with mortgaged cattle, the mortgagee waives his rights under his mortgage. The record, however, does not bear out the conclusion that the plaintiff was a participant in the commingling of cattle in such a manner as to lose any of its rights. Mr. T. H. Kewin, the vice-president and manager of the Modesto branch of the plaintiff in this action, who acted for the plaintiff in the matter of the execution of the Gonsalves mortgage to the plaintiff, testified as follows (after stating that his action was based upon a report made to him by one Mr. Gandy) : ''Q. I would like to have that written report, Mr. Kewin, if you would get it? A. If it is possible to get it, I will be glad to do so. Q. Not having the written report here, therefore I will not ask you to be exact, because the written report is the best evidence. We might progress in the trial—it will not delay the trial— what is your best remembrance now as to whether or not, at the time that Gandy made his report, there was more, or less than sixty head of cattle on the Gonsalves' ranch? A. My recollection of the report is that the stock which was covered in my mortgage—that is, the dairy herd, was intact. My understanding was, though, that Gonsalves in the meantime had bought some cattle and had traded some other cattle on the ranch which were covered by another mortgage. Q. Other Holstein cattle? A. I could not answer that question. Q. At that time when you understood from Gandy's report that Mr. Gonsalves had brought other cattle on the ranch, did you make any objection to other

cattle going on the ranch at that time? A. No, sir. Q. That was perfectly satisfactory to you and your bank? A. I was not concerned about that. Q. You knew, did you not all the time that those very cattle were mingled with the Gonsalves' cattle on the Gonsalves' ranch? A. I didn't know they were mingled, no, sir. Q. You were going by there every few months and saw the cattle? A. I saw the cattle, yes, sir. Q. Was there anything you did hear that led you to believe that the other cattle were not mingled with the cattle you had a mortgage on? A. I knew Joe had some cattle over on another ranch part of the time. I didn't follow that up. Q. You never objected to the mingling of the cattle he brought from some other place with the cattle you had your mortgage on? A. I did not, because I had absolute confidence in Joe's honesty, and I figured he would play the game clean with me.'' No other testimony has been called to our attention bringing home to the plaintiff any act of the mortgagor Gonsalves relative to the commingling of other cattle with those mortgaged to the plaintiff, and therefore we conclude that the record shows nothing which would justify the court in holding that the plaintiff lost its lien by reason of any act of the mortgagor. The rule as to subsequent confusion or commingling of chattels is clearly stated in 11 C. J. 464, section 85, to wit: ''If, when the mortgage was given, the property mortgaged was separate, the fact that it was afterwards commingled with other similar property does not affect the validity of the description, unless the confusion of the property occurs with the consent of the mortgagee, in which case the mortgage will be valid only in respect to those articles which can be identified.'' The authorities there cited in support of the rule are numerous. To the same effect is Jones on Chattel Mortgages, 4th ed., sections 481 to 483, inclusive. See, also, Cobbey on Chattel Mortgages, sections 765 and 992. Upon the question of the commingling of chattels we may further cite the case of *Page* v. *Jones,* 26 N. M. 195 [190 Pac. 541, 10 A. L. R. 761], and the note thereto beginning on page 765. The authorities cited all hold that the mortgagee must be shown to have been in some manner at fault before there can be any forfeiture of a mortgage lien. This, we think, is not shown by the record in this case.

This leaves undisposed of but one question: Was the mortgage executed and delivered to the plaintiff void as against the defendant because of the indefinite description of the cattle mortgaged? As herein stated, the mortgage recited 60 head of Holstein cows and increase and one Holstein bull, all situate on the ranch of the mortgagor three miles northwest of Ripon, in San Joaquin County. A very searching cross-examination of the mortgagor Gonsalves by the appellant failed to disclose that there were any more cows on the ranch described than the number mortgaged to the plaintiff. In fact it leads to the conclusion that there were fewer cows on the ranch described and fewer cows belonging to the mortgagor at the date of the execution of the mortgage than were actually described therein, although there is some testimony to the effect that there were then and there 60 head of cows, but if we take the result of the cross-examination of the mortgagor Gonsalves and conclude that there were some three to five cows less in number owned by him and upon his ranch at the time of the execution of the mortgage to the plaintiff, the result is in nowise affected. As a matter of coincidence we may state that the record shows that on the sixth day of July, 1923, the chattel mortgage executed by Gonsalves to the defendant Powers purported to describe just 60 head of cows. A statement also made by Gonsalves to a third party in October, 1922, was admitted in evidence, or rather, upon its being presented it was stipulated that the statement of Gonsalves showed that he then had on his ranch 56 head of cows. This was at a period some seven or eight months after the execution and delivery to the plaintiff of the mortgage purporting to cover 60 head of cows. As we have heretofore stated, the record shows that at the time of the execution by Gonsalves of the chattel mortgage delivered by him to the plaintiff, he had on the premises described and in his ownership and possession no more cattle than were mortgaged, and that the mortgage covered all the cattle belonging to him. While a mortgage of a definite number of cattle belonging to the mortgagee, of a larger band of cattle belonging to him, will be held void for uncertainty or indefiniteness, it does not follow that where a mortgagor purports to mortgage a certain number of cattle, whereas in truth and in fact he does not own quite that

number, that the mortgage will be held void for indefiniteness. Thus, in *Watson* v. *Pugh*, 51 Ark. 218 [10 S. W. 493], a chattel mortgage purporting to mortgage eight bales of cotton weighing 500 pounds each, which the mortgagor should raise in a designated locality, is not void for uncertainty, when in fact the mortgagor's whole crop did not amount to as many as eight bales of the specified weight. Also, it is held that where the number specified is more than the whole number of such articles, and there is no other property of the same kind from which a selection is to be made, there is no uncertainty in the description. (Jones on Chattel Mortgages, sec. 59; *Washington* v. *Love*, 34 Ark. 93; *Croswell* v. *Allis*, 25 Conn. 301; *Kelly* v. *Reid*, 57 Miss. 89; *Draper* v. *Perkins*, 57 Miss. 277.)

The rule is well settled that where a chattel mortgage of record contains a sufficient description, which, by putting parties upon inquiry, will enable them to identify and ascertain the property mortgaged, the mortgage will not be held void for uncertainty (Jones on Chattel Mortgages, sec. 64; 5 Cal. Jur., p. 54), where it is stated that a description of property is sufficient if it is such as to enable third parties, by inquiry, to identify the property covered by it. Or, as said in Cobbey on Chattel Mortgages, section 170: "A description which will enable third persons to identify the property, aided by inquiries which the mortgage itself indicates and directs, is sufficient."

In view of these authorities, the following cases, where chattel mortgages have been held sufficient where the description is no more definite than in the one at bar, are pertinent:

In *Knapp, Stout & Co.* v. *Deitz*, 64 Wis. 31 [24 N. W. 471], we find the following held by the supreme court of Wisconsin to be a sufficient description, to wit: Forty-one Berkshire hogs and 65 grain sacks, giving the location of the property. In the case at bar we have the 60 Holstein cows, identical with the Wisconsin case. Again, in the case of *Waggoner* v. *Oursler*, 54 Kan. 141 [37 Pac. 973], the supreme court of Kansas held valid, as against a charge of indefiniteness, a chattel mortgage which described property as follows: "45 head of three year old steers; 59 head of two year old steers; now being pastured on the Pottawatomie Reserve by said party of the first part." That hold-

ing was in an action for conversion by a third party, and in that particular is identical with the case at bar. And in that case it also appears that the mortgagor did not have exactly the same number of steers which he purported to mortgage, and it was held that the mortgage covered the steers which the mortgagor then possessed, although he purported to mortgage a greater number.

In *Rudolph* v. *National Live Stock Commission Co.,* 76 Kan. 789 [92 Pac. 1103], the supreme court of Kansas again held that "if a person of ordinary prudence, reading such mortgage and making such reasonable inquiries as the mortgage suggests would identify the cattle, then the mortgage being duly filed in the proper office is sufficient to charge third persons with notice." That case also holds that it is a question of fact for the jury to determine whether a person of ordinary prudence, reading such mortgage and making inquiries as would be suggested thereby, would be enabled to identify them. To the same effect is *McConnell et al.* v. *Langdon,* 3 Idaho, 157 [28 Pac. 403], where the supreme court of Idaho held that: "A description of property is sufficient if it will enable a third person, aided by inquiry suggested by the instrument, to identify the property." (Citing a number of authorities.) Likewise, in the case of *Ehrke* v. *Tucker,* 99 Kan. 52 [160 Pac. 985], the supreme court of Kansas decided that "It is not necessary that the description of cattle intended to be included in a chattel mortgage, shall be so definite that third parties can identify the property from that alone. It is enough if the description and the inquiry suggested by it, furnish a reasonable basis for identification. But the suggestions which indicate the line of inquiry must be taken from the mortgage itself and not rest alone in the mind of the mortgagor or mortgagee." Here the mortgage gave the kind of cattle and the location. It was but a mere matter of inquiry at the time the defendant accepted his mortgage from Gonsalves, to ascertain what cows the mortgagor had on his premises at the time of the execution and delivery by Gonsalves of a chattel mortgage thereon in the month of February, 1922. The description in the mortgage under consideration is readily distinguishable from that contained in the mortgage under consideration in the case of *Parker* v. *Chase,*

62 Vt. 206 [22 Am. St. Rep. 99, 20 Atl. 198], relied upon by the appellant. In that case the chattel mortgage purported to mortgage three out of five cows without any further description. This, of course, did not designate the cows mortgaged. We might cite to the same effect the case of *Tindall* v. *Wasson*, 74 Ind. 495, where a similar description was held insufficient, but where it was held also that parol evidence is admissible to identify the particular property described in the mortgage, that is, parol evidence may aid but not make a description. Here, parol evidence could easily have been obtained by the defendant and the identity of the property mortgaged ascertained. In *First Nat. Bank of Mexico* v. *Ragsdale*, 158 Mo. 668 [81 Am. St. Rep. 332, 59 S. W. 987], a description in a chattel mortgage which read, "120 head of feeding cattle now on feed in Audrain County, Missouri," was held sufficient. It must be stated, however, that this holding was had in an action against the mortgagor. The rule in relation to descriptions of chattels is well settled in 11 Corpus Juris, page 457, which reads: "As against third persons the description in the mortgage must point out its subject matter so that such persons may identify the chattels covered, but it is not essential that the description be so specific that the property may be identified by it alone, if such description suggests inquiries or means of identification which, if pursued, will disclose the property covered. This rule is based upon the maxim, that is certain, which is capable of being made certain. So a description is sufficient if it may be aided by parol proof and the property covered by the mortgage identified."

The record before us discloses that the mortgage executed by Gonsalves and delivered to the defendant, referred to a prior mortgage. The reference is to a mortgage other than the one belonging to the plaintiff, and was described as a chattel mortgage executed in favor of a bank located at Manteca, in San Joaquin County, but it does evidence the fact that the defendant's attention was called to the existence of a prior mortgage, and a search of the record would have given him the necessary data upon which, prosecuting reasonable inquiries, he could have ascertained the existence

of the plaintiff's mortgage and the property covered and included therein.

The judgment is affirmed.

Hughes, J., *pro tem.*, and Finch, P. J., concurred.