No. 29,995.

THE FIRST NATIONAL BANK AND TRUST COMPANY, of Oklahoma City, Okla., *Appellant,* v. A. C. MORGANROTH, THOMAS BLACK, ERNEST STROMER, F. W. MUCK, ORVILLE GEORGE, JAMES E. GEORGE and CARL BOLTON, *Appellees.*

(300 Pac. 1061.)

Opinion filed July 3, 1931.

*A. K. Stavely,* of Lyndon, *W. F. Wilson, W. F. Wilson, Jr.,* and *R. E. Owens,* all of Oklahoma City, Okla., for the appellant.

*J. T. Pringle,* of Burlingame, *A. O. Justice,* of Osage City, and *J. M. Fisher,* of Kansas City, Mo., for the appellees.

The opinion of the court was delivered by

SLOAN, J.: This is an action in replevin, in which six suits were consolidated and tried as one case. The defendants prevailed, and plaintiff appeals.

The appellees, who are Osage county farmers, purchased in the aggregate 502 head of cattle from Omer Power, which were, at the time of the purchase, in a pasture on the Moore ranch in Oklahoma. The principal question in the case is whether Power acquired a good title to the cattle in question from Jesse C. Moore.

For many years prior to 1928 Jesse C. Moore owned and operated a cattle ranch near Sulphur, Okla. The ranch consisted of about 15,000 acres of land, which was used as a pasture. Some of the pastures were in Pontotoc county, others in Johnston county, and still others in Murray county. Pontotoc county on the east and Murray county on the west had a common boundary north of Johnston county, which was bounded by Pontotoc county on the north and Murray county on the west.

Moore was an experienced ranchman and, before the crash in his fortunes which occurred shortly before this litigation, his borrowing line of credit frequently ran above $250,000.

It was Moore's practice during the fall of each year to purchase cattle in Texas, Arkansas and other places and ship them to his ranch. In the fall of 1927 he bought in west Texas, and shipped to his ranch, about 600 white-faced cows and about 1,600 white-faced steer calves, which were on the ranch in the summer of 1928.

In the summer of 1928 Moore employed R. C. Ridley, an experienced cattle man, to purchase for him in Texas between 2,000 and 3,000 head of cattle. The cattle so purchased were shipped to the ranch between the 13th and 23d of October, 1928. There is a conflict in the testimony as to the number of cattle that were taken to the ranch. One witness estimates 1,500, while another says 2,800. The cattle were unloaded at Scullin, a station near the ranch, in Murray county, and from there they were taken to the ranch headquarters, dehorned, branded and then distributed to the various pastures. The length of time the cattle remained in each pasture is not definitely established, and the evidence is indefinite as to the number of cattle that were on the ranch.

About this time Moore applied to the appellants for a loan with which to pay for the cattle as they were delivered. The application was at first rejected and on October 30, 1929, he succeeded in procuring a loan from the Stock Yards Loan Company, of Kansas City, in the amount of $62,817.50, and to secure the payment thereof he executed a chattel mortgage, which was filed in Johnston county November 5, 1928, upon certain cattle described as follows:

"Fifteen hundred ten (1,510) head of Hereford cattle, more particularly described as:

 1,424 hd. coming 1 yr. old extra high-grade steers.
 86 hd. coming 1 yr. old extra high-grade heifers.

 1,510 hd.

"Branded: —— on left thigh. Located on my ranch 2½ miles south of Scullin, in Johnston county, Oklahoma."

On November 14, 1928, Moore, who was then indebted to the appellants in the sum of $40,000, which amount he represented had been used in the purchase of the cattle shipped from Texas, executed a chattel mortgage to secure the payment of said indebtedness, which was filed in Pontotoc county, on November 15, 1928, upon certain cattle described as follows:

"1,035 head of white-face yearlings, weighing at this time about 500 lbs. each, branded —— on left thigh, bought in Ford and Motley counties, Texas, recently, high-grade white-face steers; will be dehorned; value $54,337.50.

"(Including also sufficient feed and grass to properly care for the above cattle during the life of this loan.)

"Now located on the Jesse C. Moore ranch, 3 miles southeast of Hickory, Pontotoc county, Oklahoma."

The mortgage was written at appellant's bank and no inspection was made of the cattle until May, 1929, when Mr. Teter, an officer of the bank, visited the ranch and found cattle which appeared to meet the requirements of the mortgage, but Moore represented that the cattle shown to Teter were in Pontotoc county, while in fact they were in Johnston and Murray counties. By September 11, 1929, the indebtedness had increased to $52,500 on account of funds advanced by appellant to Moore for feed. Moore, at that time, represented to the appellant that five of the cattle described in the mortgage had died, and that he intended to take 600 head to Carter county and retain 440 head in Pontotoc county. Accordingly, new notes and mortgages were executed on September 11, 1929. To secure the payment of a note in the amount of $22,500, a chattel mortgage was executed, which was filed in Pontotoc county September 18, 1929, upon certain cattle described as follows:

"430 head of coming 2-year-old white-faced steers, being the front end off of 1,030 steers branded with a stripe (——) on left thigh, bought in Ford and Motley counties, Texas, in 1928; a good grade of white-faced cattle dehorned; value, $70 a head.

"Including also sufficient grass and feed to properly care for the above cattle during the life of this loan.

"Now located on the Jesse C. Moore ranch, 3 miles northeast of Scullin, Pontotoc county, Oklahoma."

To secure the payment of a note in the amount of $30,000 a chattel mortgage was executed, which was filed in Carter county, September 13, 1929, upon certain cattle described as follows:

"600 head of white-faced steers, coming twos, bought in Ford and Motley counties, Texas, 1928, branded with a stripe (——) on left thigh, a high grade of white-faced dehorned steers. Value, $39,000.

"Including also sufficient grass and feed to properly care for the above cattle during the life of this loan.

"Now located on land leased by Jesse C. Moore, 4 or 5 miles northeast of Berwyn, Carter county, Oklahoma."

The appellant knew at the time the mortgage was taken on the 600 head of cattle that they were not situated in Carter county, but were in Johnston county, and they were never taken to Carter county. On the execution of these mortgages last described the mortgage in the amount of $40,000 was released of record.

In April, 1929, the Stock Yards Loan Company learned that Moore was in financial trouble and made an investigation of their mortgage security. Moore admitted a large shortage of cattle. The inspection showed that there was on the ranch at that time about 6,000 head of cattle. The Stock Yards Loan Company, through its agent, found the cattle covered by their mortgage in Johnston county, where the mortgage was filed. They took charge of the cattle, sorted and shipped them when marketable, reducing their loan to $35,000.

On September 5, 1929, Moore, with the assistance of a representative of the Stock Yards Loan Company, sold to Omer Power 600 head of cattle described in a bill of sale, as follows:

"Six hundred (600) head of dehorned white-faced one-year-old past steer cattle branded —— low down on left thigh. Said cattle are now located on what is known as the Armstrong ranch, six miles southeast of Scullin, Johnston county, Oklahoma, where they are to remain until January 1, 1930, without any cost to the said Omer Power."

In order to pay for the cattle Power obtained a loan from the Drumm-Standish Commission Company in the amount of $37,448.55, and secured the same by a mortgage on the cattle purchased from Moore. The cattle at the time of the purchase were located in what is known as the Meadow pasture in Johnston county. About November 1, 1929, the cattle were moved from the Meadow pasture to

the quarantine pasture, which is located in Murray and Pontotoc counties, and it is from this pasture that the cattle were purchased by the appellees.

The law of Oklahoma relating to chattel mortgages was introduced in evidence, which provides that a mortgage of personal property is void as against creditors of the mortgagor and subsequent purchasers for value, unless the original or an authenticated copy of the mortgage be filed by depositing the same in the office of the register of deeds of the county where the property mortgaged, or any part thereof, is situated. It is provided, however, that when a mortgaged chattel is moved from one county to another that the previous filing of the mortgage shall not operate as notice for a longer period than 120 days after such removal.

It was contended in the trial of the case by the appellees that the cattle purchased by them from Power were not included in the mortgage given by Moore to the appellant, and that Power purchased the cattle from Moore before the execution of the mortgages of September 11, 1929. The jury found generally for the appellees, and specially that Power purchased the cattle and took open, notorious and actual possession of them on September 5, 1929.

It is contended by the appellant that the evidence presented a question of law, and that the court should have disposed of the case in appellant's favor without submitting it to the jury, and after the return of the verdict should have sustained appellant's motion *non obstante veredicto*.

The court, after instructing the jury generally, gave the following instruction:

"(19) The court instructs the jury that if you believe and find from the evidence that the $40,000 mortgage of plaintiff dated November 14, 1928, and referred to in the evidence was not on the cattle in question, then your verdict should be for the defendants and against the plaintiff, provided you further believe and find from the evidence Omer Power bought the cattle in question from Jesse C. Moore on or about September 2, 1929, and took open, notorious and exclusive possession of said cattle prior to September 11, 1929."

The law is well settled that the sufficiency of a description contained in a chattel mortgage is a question of law for the court, while the identity of the property mortgaged is one of fact for the jury. (*Dendy v. Bank*, 76 Kan. 301, 91 Pac. 682; *Rudolph v. Commission Co.*, 76 Kan. 789, 92 Pac. 1103; *Ehrke v. Tucker*, 99 Kan. 52, 160

Pac. 985; *Hillery v. Waurika Nat. Bank,* 100 Okla. 34, 226 Pac. 1051; 11 C. J. 472, and cases there cited.)

It is the duty of the court to examine the mortgage and determine from the description therein given whether it is sufficient to describe the property. The description is sufficient if a person with ordinary prudence, reading such mortgage and making such reasonable inquiry as the mortgage itself suggests, can identify the property described in the mortgage. The mortgage was not void nor held to be void by the court by reason of an insufficient description. The court held that the mortgage was valid and the description sufficient, but submitted to the jury the question of fact to determine whether the cattle in question were the cattle described in the mortgage.

It devolved upon the appellant to prove that the cattle were those described in the mortgage and the appellant did produce the evidence of Mr. Moore, who testified that the cattle in controversy were the cattle described in the mortgage.

On the other hand, the evidence of the appellees tended to show that the cattle purchased in the fall of 1928 were calves and not yearlings; that the cattle were not situated in the county designated by the mortgage; that the cattle described in the mortgage were the cattle purchased in the fall of 1927; that Moore had misrepresented the location of the cattle and had shown the appellant cattle which did not belong to him.

The court properly submitted the question of the identity of the cattle to the jury. The jury found from substantial testimony that the cattle purchased were not the cattle described in appellant's mortgage, and that Power took exclusive possession of them before the execution of the mortgages of September 11, 1929.

It is contended that the court erred in the admission of immaterial testimony. We have examined the record and are of the opinion that the testimony was material and properly admitted.

Finding no reversible error, the judgment of the court is affirmed.