## NATIONAL LIVE STOCK CREDIT CORPORATION OF ST. LOUIS v. THOMPSON et al.

No. 1153.

Circuit Court of Appeals, Tenth Circuit.

April 1, 1935.

Rehearing Denied May 20, 1935.

Francis C. Wilson, of Santa Fe, N. M. (C. M. Strawman, of Santa Fe, N. M., on the brief), for appellant.

E. R. Wright, of Santa Fe, N. M., and Marvin T. Johnson, of Tulsa, Okl. (R. A. Kleinschmidt, of Tulsa, Okl., on the brief), for appellees.

Before PHILLIPS, McDERMOTT, and BRATTON, Circuit Judges.

McDERMOTT, Circuit Judge.

Defendants owned 1,183 head of two-year-old steers, 560 of which were held by

the brand "V on left hip"; 354 of these carried other brands; 111 steers, with a "DD" holding brand, also carried a "V" brand. In October, 1930, these were delivered to the possession of Vestring Brothers under a contract obligating Vestring Brothers to feed and care for them until September 15, 1931, at which time they were to be sold; defendants were to have $75,238.52 of the proceeds, and Vestring Brothers the balance. This contract was not recorded until after plaintiff's mortgage was taken.

In the fall and winter of 1930, these cattle were being fed in various pastures in Kansas; 300 head, the biggest part of which were branded "V" on the left hip, were on the De Witt Ranch in Chase County; 160 head, the most of them held by the "V" brand, were on the Green Ranch near Burns;[1] 303 head—all branded "V" on left hip—were in the Rafferty or Fluke pastures in Chase County. It thus appears from plaintiff's own witnesses, that the 560 head of "V" cattle owned by defendants were on the De Witt, Green and Fluke pastures on November 17, 1930.

On November 17, 1930, Vestring Brothers mortgaged to plaintiff "700 good to choice Hereford three-year-old steers branded V on left hip * * * now located on the Vestring farm five miles northeast of Burns, County of Marion and County of Chase, State of Kansas"; 100 head, similarly described except no location was given, were covered by another mortgage executed the same day.[2] Shortly thereafter defendants learned that the Vestrings had given a mortgage on "V" cattle, but the Vestrings owned older steers branded "V" on left hip, and the Vestrings assured defendants that they had not mortgaged defendants' steers.[3] In the spring of 1931, defendants advanced considerable sums of money to the Vestrings to feed their cattle.

In the fall of 1931 defendants moved their cattle to market, doing it openly and with no suggestion from the Vestrings that they were mortgaged to plaintiff. At the Kansas City market, defendants' steers were looked over by Myers, the representative of plaintiff who identified on the ground the cattle covered by plaintiff's mortgage when the mortgage was given. Myers did not then suggest that these were the cattle mortgaged to plaintiff; on the contrary, he stated that plaintiff intended to hold the cattle mortgaged for a better market.

In the spring of 1932 plaintiff could not locate the steers covered by its mortgage. Vestring told plaintiff that defendants had shipped them out the fall before. Plaintiff then brought this action for conversion. The court submitted to the jury the single issue whether the cattle defendants sold were those covered by plaintiff's mortgage. The jury found for defendants. Plaintiff appeals.

Many of the errors assigned are answered by the short statement that the court decided every legal question in favor of plaintiff, leaving to the jury the single question of identity. Defendants raised the issue that the cattle were mortgaged to a Tulsa bank, later paid; that when plaintiff took its mortgage, it had actual knowledge of defendants' ownership; that the contract, held by the trial court to be a conditional sales contract, was a pasturage contract, and other legal defenses. The trial court did not submit the issue as to whether plaintiff's mortgage was invalid for indefiniteness of description. On the contrary the court held as a matter of law that plaintiff's mortgage was a valid lien on the cattle covered by it; denied defendants' request to submit to the jury the issue of plaintiff's knowledge of defendants' contract; the court stripped the case of every defense except that the cattle taken by defendants were not those covered by plaintiff's mortgage. The court told the jury that plaintiff's mortgage was made prior to the recording of the conditional sales contract; that the jury must determine whether defendants' cattle were included in that mortgage; that from all the testimony the jury must "say from that whether or not the cattle of the Thompson Brothers turned over to the Vestring Brothers was included within the mortgage given to the plaintiff in this case. If it was, they

---

[1] Burns is in the extreme southeast corner of Marion County, about a mile north of the Butler County line and four or five miles west of the Chase County line.

[2] Other cattle were covered by these mortgages, and some of defendants' cattle carried other brands. Plaintiff's strongest case is on the "V" brands, and we confine the opinion to that brand.

[3] Actual knowledge of defendants is immaterial, since plaintiff's mortgage was properly recorded and the court instructed the jury that defendants were liable if they took possession of cattle covered by the mortgage. Defendants found that the mortgage did not describe their cattle, and after Vestring's assurance, thought no more about it.

had a valid mortgage on them, and were entitled to payment for them. Then, of course, you must determine whether or not the cattle that were taken by the defendants in this case, sold in the fall of 1931, were any of the cattle that had been mortgaged to the plaintiff in this case. If they had been mortgaged to the plaintiff in this case. The taking of such cattle, shipping to market, selling them, getting the proceeds, they would be guilty of conversion, as alleged in this complaint, and they would be liable to the plaintiff for the value of such cattle."

■ Plaintiff complains because the trial court declined to instruct the jury that a description in a chattel mortgage is "good and sufficient in law" if it is definite enough, aided by inquiries suggested by the instrument, to enable a reasonable person to identify the items mortgaged. If the trial court had submitted to the jury the issue of whether plaintiff's mortgage was invalid for indefiniteness of description, it would have been proper to have instructed them on the law as to definiteness of description. But the court ruled, as a matter of law, that plaintiff had a valid mortgage. Why then burden the jury with an instruction on a question which the court has decided? Why should plaintiff complain that the jury was not charged as to what it takes to make a valid mortgage, when the court charged them that plaintiff's mortgage was valid? Moreover, the court was right in deciding the question of validity, for the construction of documents is for the court except in certain cases where resort must be had to extrinsic facts.

■ In actions for conversion of mortgaged property, two distinct questions may be presented: (1) Is the mortgage invalid for insufficiency or indefiniteness of description? Unless resort must be had to extrinsic evidence, this question is for the court. The trial court here having held the mortgage valid, there was no issue to go to the jury on that point, and no occasion for any charge as to what is or is not a legally sufficient description. (2) Did defendants convert the property which was mortgaged? This question of identity is for the jury if reasonable men could draw different conclusions from the evidence. A mortgage might describe a steer with such meticulous detail as to age, brands, breed, color, and location, as to be indisputably valid, yet if defendants exercised dominion over another animal of the same description, there would

be no liability. The Supreme Court of Kansas has recently dealt with the exact situation here, and since these cattle were mortgaged in Kansas, and converted in Kansas if converted at all, its decision is of peculiar significance. That court held, in affirming a verdict for defendants, that:

"The law is well settled that the sufficiency of a description contained in a chattel mortgage is a question of law for the court, while the identity of the property mortgaged is one of fact for the jury. Dendy v. Bank, 76 Kan. 301, 91 P. 682; Rudolph v. Commission Co., 76 Kan. 789, 92 P. 1103; Ehrke v. Tucker, 99 Kan. 52, 160 P. 985; Hillery v. Waurika Nat. Bank, 100 Okl. 34, 226 P. 1051; 11 C. J. 472, and cases there cited.

"It is the duty of the court to examine the mortgage and determine from the description therein given whether it is sufficient to describe the property. The description is sufficient, if a person, with ordinary prudence reading such mortgage and making such reasonable inquiry as the mortgage itself suggests, can identify the property described in the mortgage. The mortgage was not void nor held to be void by the court by reason of an insufficient description. The court held that the mortgage was valid and the description sufficient, but submitted to the jury the question of fact to determine whether the cattle in question were the cattle described in the mortgage.

"It devolved upon the appellant to prove that the cattle were those described in the mortgage, and the appellant did produce the evidence of Mr. Moore, who testified that the cattle in controversy were the cattle described in the mortgage.

"On the other hand, the evidence of the appellees tended to show that the cattle purchased in the fall of 1928 were calves and not yearlings; that the cattle were not situated in the county designated by the mortgage; that the cattle described in the mortgage were the cattle purchased in the fall of 1927; that Moore had misrepresented the location of the cattle and had shown the appellant cattle which did not belong to him.

"The court properly submitted the question of the identity of the cattle to the jury. The jury found from substantial testimony that the cattle purchased were not the cattle described in appellant's mortgage, and that Power took exclusive possession of them before the execution of the mortgages of September 11, 1929." First Nat'l Bank v. Morganroth, 133 Kan. 474, 478, 479, 300 P. 1061, 1064.

■ Plaintiff contends that the trial court should have instructed a verdict in its favor for at least the 560 head of "V" cattle. Is there any substantial evidence from which reasonable men might conclude that these cattle were not mortgaged to plaintiff?

The description does not fit. Plaintiff's mortgage covered "three-year-old steers," while defendants' cattle were two-year-olds. The evidence is entirely satisfactory that a steer is a two-year-old until it is three. When the mortgage was made, plaintiff had a representative on the ground, one Myers, a professional and experienced cattle buyer. There is nothing in the record to suggest that Myers mistook a two-year-old for a three-year-old. The suggestion that plaintiff describes cattle as they will be when the mortgage is due is simply a statement that plaintiff habitually misdescribes mortgaged property. Nor does the location fit. The cattle Myers saw and identified were undoubtedly on the "Vestring farm five miles northeast of Burns" where the mortgage said they were. Defendants' cattle at that time were scattered on three other ranches. The conclusion is close to irresistible that the three-year-olds then on the Vestring farm, which Myers saw and which plaintiff mortgaged, were not the two-year-olds scattered on other ranches. The Vestrings had other "V" cattle, some of their own, and 600 steers belonging to one Majors; the Majors' brand was "V" on the right hip, but a mistake as to the hip might as readily be inferred as two mistakes as to age and location. Moreover, Myers saw defendants' cattle in the stockyards at Kansas City; he then made no claim that they were the cattle he examined when the mortgage was made; on the contrary he said impliedly they were not.

Another significant thing: Myers was not called as a witness by plaintiff nor his deposition taken; the lame excuse was made that Dr. Wolf could give the same evidence, but Dr. Wolf did not inspect the cattle when the mortgage was made. Depositions were freely taken in this case, and yet plaintiff did not produce the evidence of its only representative who knew what cattle were mortgaged. Instead, plaintiff relied upon the testimony of Louis Vestring; his testimony was not only badly shaken on cross-examination but was impeached by the fact that he confessed to mortgaging cattle which he did not own, and appropriating the proceeds to his own use. The jury would be quite warranted in rejecting his testimony.

The mortgages describe 800 steers branded "V" on left hip; defendants only had 560 steers with a "V" holding brand, and of these all but 206 carried other brands as well.

There are other circumstances of weight. It was clearly proven that Myers learned, shortly before plaintiff's mortgage was taken, that the Vestrings were feeding "V" cattle of defendants under a contract, and that the Vestrings did not own them. It is highly improbable that Myers, knowing all these facts, would have inspected defendants' cattle and passed them as security for a loan to the Vestrings. The more probable deduction is that the Vestrings showed him other cattle. The Vestrings borrowed money from defendants to buy feed for their cattle after the mortgage was given. This is a circumstance, slight it is true, bearing out the hypothesis that the mortgage covered other cattle, and that Vestring, for reasons of his own, later concluded to appease plaintiff by undertaking to shift the blame to defendants.

We conclude that the trial court did not err in submitting to a jury the question of fact presented by the record.

■■ Many errors are assigned to the rulings of the court on the admissibility of evidence. The notice to Myers of defendants' ownership of these cattle was properly admitted as one of the circumstances bearing upon what cattle Myers saw when plaintiff's mortgage was made. Other testimony was similarly admitted over objection which need not be detailed. Without intimating that any of it was too remote to have value, it can at least be said that no harm was done. Plaintiff asked to read part of an answer which was superseded by an amended answer; the court permitted that to be done, but stated that defendants might then read the rest of it. Error is assigned to that ruling, but we think it groundless.

The defendants cannot be held in damages unless the cattle they took away were the identical cattle covered by plaintiff's mortgage. That is a question of fact. It was fairly and clearly submitted to a jury. Upon abundant evidence, the jury found for the defendants. That ends the case.

**Judgment affirmed.**